**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO.**

**SECURITIES AND EXCHANGE COMMISSION,**

**Plaintiff,**

v.

**PRAGER METIS CPAs, LLC,**
**and PRAGER METIS CPAs LLP,**

**Defendants.**

_____/

**COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF**

Plaintiff Securities and Exchange Commission ("SEC" or "Commission") alleges:

I.      **INTRODUCTION**

1.      The Commission considers "the independence of the auditors who examine financial statements filed with the Commission as central to the effective implementation of the federal securities laws.  Indeed, the federal securities laws underscore the crucial function of independent auditors in protecting public investors by requiring that 'independent' accountants certify financial statements filed with the Commission."  Codification of Financial Reporting Policies ("Codification"), Section 601.01.

2.      Prager Metis CPAs, LLC and its California professional services firm, Prager Metis CPAs LLP, (collectively, "Prager" or "Defendants") failed to comply with the Commission's auditor independence rule in connection with 62 audits, 11 examinations ("exams"), and 144 reviews, conducted pursuant to 87 engagement letters dated from in or around December 11, 2017 to in or around October 28, 2020.  Prager's auditor independence violations in connection with these engagements affected 62 "SEC Registrant Clients,"

comprised of 54 public issuers, 4 registered broker-dealers ("BDs"), and 4 registered investment advisers ("IAs"), from which Defendants collectively earned more than $3,000,000 in fees.

3.      In connection with these audits, exams, and reviews, Prager and its SEC Registrant Clients entered into engagement letters containing indemnification provisions.  As a result of the inclusion of these indemnification provisions, Prager was not independent during the engagement periods for each of the audits, exams, and reviews, in accordance with Rule 2-01(b) of Regulation S-X [17 C.F.R. § 210.2-01(b)], which provides the Commission standard for auditor independence.  Defendants had been on notice of their independence impairment since at least early January 2019 when a new partner who recently had joined Prager raised the issue with senior Prager partners.

4.      By engaging in this conduct and failing to be independent within the meaning of Rule 2-01(b) of Regulation S-X [17 C.F.R. § 210.2-01(b)], the Defendants are liable as follows, and unless enjoined, are reasonably likely to continue to violate the federal securities laws:

      a.      Defendants violated Rule 2-02(b) of Regulation S-X [17 C.F.R. § 210.2-02(b)], for each engagement with an issuer client, as identified in this Complaint below, in which Defendants provided an accountant's report, as that term is defined in Rule 1-02 of Regulation S-X, hereinafter "audit report" (certifying each issuer client's financial statements), or consented to the inclusion of an audit report from a prior period, falsely purporting to be a report of an independent registered public accounting firm, that Defendants' issuer clients then included in filings with the Commission;

      b.      Defendants aided and abetted their issuer clients' violations, as identified in this Complaint below, of Sections 13(a) and 15(d) of the Securities

Exchange Act of 1934 ("Exchange Act") [15 U.S.C. §§ 78m(a) and 78o(d)] and Rules 13a-1, 13a-11, 13a-13, 15d-1, and 15d-13 [17 C.F.R. §§ 240.13a-1, 240.13a-11, 240.13a-13, 240.15d-1, and 240.15d-13] thereunder;

c.  Defendant Prager Metis CPAs, LLC violated Rule 17a-5(i) of the Exchange Act [17 C.F.R. § 240.17a-5(i)], for each engagement with a BD client, as identified in this Complaint below, in which Defendant Prager Metis CPAs, LLC provided an audit report, falsely purporting to be a report of an independent registered public accounting firm, that Prager Metis CPAs, LLC's BD clients then included in filings with the Commission;

d.  Defendant Prager Metis CPAs, LLC aided and abetted its BD clients' violations, as identified in this Complaint below, of Section 17(a) of the Exchange Act [15 U.S.C. § 78q(a)] and Rule 17a-5 [17 C.F.R. § 240.17a-5] thereunder; and

e.  Defendant Prager Metis CPAs, LLC aided and abetted its IA clients' violations, as identified in this Complaint below, of Section 206(4) of the Investment Advisers Act of 1940 ("Advisers Act") [15 U.S.C. § 80b-6(4)] and Rule 206(4)-2 [17 C.F.R. § 275.206(4)-2] thereunder.

5.  The Commission seeks an injunction against Defendants for their violations and for aiding and abetting the violations of their SEC Registrant Clients as alleged herein, disgorgement with prejudgment interest, and civil money penalties.

## II.    **JURISDICTION AND VENUE**

6.      This Court has jurisdiction over this action pursuant to Sections 21(d), 21(e), and 27(a) of the Exchange Act [15 U.S.C. §§ 78u(d), 78u(e), and 78aa(a)] and Sections 209(d), 209(e), and 214 of the Advisers Act [15 U.S.C. §§ 80b-9(d), 80b-9(e), and 80b-14].

7.      This Court has personal jurisdiction over the Defendants, and venue is proper in the Southern District of Florida pursuant to Section 27 of the Exchange Act [15 U.S.C. § 78aa], Section 214 of the Advisers Act [15 U.S.C. § 80b-14], and 28 U.S.C. § 1391(b).  Among other things, Defendants transacted business in this judicial district where certain of the acts, practices, and courses of conduct constituting the violations alleged in this Complaint occurred.  Defendant Prager Metis CPAs, LLC has two offices located in this judicial district, and at least nine of Defendant Prager Metis CPAs, LLC's SEC Registrant Clients had their primary places of business during the relevant engagements in, or their addresses listed on the relevant engagement letters in, the Southern District of Florida.  In dozens of instances, the SEC Registrant Clients located in this judicial district included the audit reports relevant to this Complaint in their filings with the Commission. Defendant Prager Metis CPAs, LLC, also conducted 4 surprise examinations on a SEC Registrant Client whose primary place of business is located in this judicial district.

8.      In connection with the conduct alleged in this Complaint, Defendants, directly or indirectly, singly or in concert with others, made use of the means or instrumentalities of interstate commerce, the means or instruments of transportation or communication in interstate commerce, and of the mails.

III.   **DEFENDANTS**

9.     **Prager Metis CPAs, LLC** is an accounting and auditing firm headquartered in
New York, New York, which has been registered with the Public Company Accounting
Oversight Board ("PCAOB") since 2003.[1]  It has 18 offices worldwide (excluding the five
offices of Prager Metis CPAs LLP), including two offices in Miami, Florida.  Prager Metis
CPAs, LLC provides accounting, auditing, consulting, and tax services to a variety of companies,
including public issuers whose securities are registered with the Commission and trade in the
U.S. markets, BDs, and IAs.

10.    **Prager Metis CPAs LLP** is an accounting and auditing firm headquartered in El
Segundo, California, which has been registered with the PCAOB since 2010.  It has five offices
in California.  Prager Metis CPAs, LLC formed Prager Metis CPAs LLP to perform professional

---

[1]  The PCAOB is a private-sector, nonprofit corporation created by the Sarbanes-Oxley Act of
2002, Pub. L. No. 107-204 (July 30, 2002) [15 U.S.C. § 7201 et seq.] ("SOX") to oversee,
among other things, accounting professionals who provide independent audit reports for publicly
traded companies.  The Dodd-Frank Wall Street Reform and Consumer Protection Act, Pub. L.
No. 111-203 (July 21, 2010) ("Dodd-Frank") gave the PCAOB authority over firms that perform
audits of broker-dealers registered with the Commission.  The PCAOB's responsibilities include
registering accounting firms, conducting inspections of registered accounting firms, establishing
rules and standards by which those firms are to conduct audits of public companies and broker-
dealers, and investigating and enforcing against registered firms and their associated personnel's
non-compliance with applicable rules and standards.  SOX entrusted the Commission with
authority to oversee the PCAOB's operations.  Likewise, the Commission regulates accounting
firms performing audits or reviews of the financial statements of, among other entities, issuers
and broker-dealers, and the Commission's auditor independence standard applies to such
accounting firm engagements.  Note 1 to PCAOB Rule 3520, which requires a registered public
accounting firm to be independent from its client throughout the relevant engagement period,
clearly states, "Under Rule 3520, a registered public accounting firm or associated person's
independence obligation with respect to an audit client encompasses ***not only*** an obligation to
satisfy the independence criteria applicable to the engagement set out in the rules and standards
of the PCAOB, ***but also an obligation to satisfy all other independence criteria applicable to
the engagement, including the independence criteria set out in the rules and regulations of the
Commission under the federal securities laws***."  (Emphasis added.)

services in California, but all employees are employed by Prager Metis CPAs, LLC, which has a service agreement with Prager Metis CPAs LLP.

## IV.   OTHER RELEVANT ENTITIES AND INDIVIDUALS

11.   **SEC Registrant Clients** refers to the 62 SEC Registrant Clients comprised of 54 issuers, 4 BDs, and 4 IAs, with which Prager entered into 87 engagement letters, dated from in or around December 11, 2017 to in or around October 28, 2020, containing indemnification provisions, which are identified in the attached **Exhibit 1**, as **Issuer 1** through **Issuer 54**, **Broker-Dealer 1** through **Broker-Dealer 4** (which all are registered with the Commission), and **Investment Adviser 1** through **Investment Adviser 4** (which all were registered with the Commission during the December 2017 to October 2020 time period), along with the following information (as relevant for the respective 62 SEC Registrant Clients):

   a.   identification of the following 3 SEC Registrant Clients as clients of Defendant Prager Metis CPAs LLP:  **Issuer 16**, **Issuer 21**, and **Issuer 54** (all of the other SEC Registrant Clients were clients of Defendant Prager Metis CPAs, LLC);

   b.   the approximate date of the engagement letter containing the indemnification provisions, along with the Prager engagement partner (identified as **Engagement Partner 1** through **Engagement Partner 10** in **Exhibit 1**) for each relevant engagement;

   c.   the relevant stock market for the issuer clients (if applicable);

   d.   the periods of the financial statements that Prager audited or reviewed for the issuer and BD clients and the engagement periods for the exams of

6

client assets in the custody of an IA for the IA clients, as well as any periods for any subsequent filings (as described below);

e.  the relevant reporting provisions for the issuers, i.e., whether the issuers were reporting pursuant to Section 13(a) of the Exchange Act [15 U.S.C. § 78m(a)] and the rules thereunder or Section 15(d) of the Exchange Act [15 U.S.C. § 78o(d)] and the rules thereunder; and

f.  the relevant filings, including any subsequent filings, with the Commission.

12.  **Auditing Firm 1** was a certified public accounting firm that had been based in Hackensack, New Jersey, licensed in New Jersey since November 1981, and registered with the PCAOB since November 2003, before Prager acquired it in or around August 2018.

13.  **New BD Engagement Partner** refers to a partner who joined Prager in approximately November 2018 to work on engagements with BD clients, and shortly after joining, in approximately January 2019, brought the issue of the indemnification provisions in engagement letters of SEC Registrant Clients to the attention of Prager senior management, as described below.  New BD Engagement Partner left Prager in approximately March 2021 to pursue a new opportunity.  New BD Engagement Partner also is **Engagement Partner 10** for one engagement with an SEC Registrant Client as identified in **Exhibit 1**.

14.  **Partner-in-Charge of Prager's Public Company Audit Practice** refers to Prager's former partner, who was in charge of Prager's public company audit practice and oversaw engagements with public issuers from approximately March 2018 to December 2020 time period, and then, left Prager in approximately September 2021.  The Partner-in-Charge of

Prager's Public Company Audit Practice also is **Engagement Partner 5** for certain engagements with SEC Registrant Clients as identified in **Exhibit 1**.

15.     **Partner-in-Charge of Assurance** refers to Prager's current partner, who currently oversees and historically oversaw non-public company engagements since at least January 2019.  The Partner-in-Charge of Assurance is also **Engagement Partner 6** for certain engagements with SEC Registrant Clients as identified in **Exhibit 1**.

16.     **New Issuer Engagement Partner** refers to a partner who joined Prager in approximately summer 2019 to work on engagements with issuer clients, and when joining Prager, in approximately June 2019, brought the issue of indemnification provisions in engagement letters for issuer clients to management's attention, as described below.  New Issuer Engagement Partner had left Prager by at least November 2021.  New Issuer Engagement Partner also was **Engagement Partner 4** for certain engagements with SEC Registrant Clients as identified in **Exhibit 1**.

## V.     FACTS

### A.     AUDITOR INDEPENDENCE STANDARDS AND RULES

17.     The Commission has long recognized that:

> Independent auditors have an important public trust.  Investors must be able to rely on issuers' financial statements.  It is the auditor's opinion that furnishes investors with critical assurance that the financial statements have been subjected to a rigorous examination by an objective, impartial, and skilled professional, and that investors, therefore, can rely on them.  If investors do not believe that an auditor is independent of a company, they will derive little confidence from the auditor's opinion and will be far less likely to invest in that public company's securities.

Revision of the Commission's Auditor Independence Requirements, Exchange Act Rel. No. 43602, 2000 WL 1726933, at *2 (Nov. 21, 2000) (footnotes omitted).

18.     Regulation S-X provides "the form and content of and requirements for financial statements" for various filings, including both offering filings under the Securities Act of 1933 ("Securities Act") and reports under the Exchange Act.  See 17 C.F.R. § 210.1-01(a).

19.     The Commission's independence rules are applicable to accounting firms, like Defendants, performing audit and review engagements for public issuers and exam engagements for IAs subject to Rule 206(4)-2 of the Advisers Act [17 C.F.R. § 275.206(4)-2] ("Custody Rule") and are incorporated by reference for BD audit engagements:

a.      With respect to issuer clients, Rule 2-01(b) of Regulation S-X [17 C.F.R. § 210.2-01(b)] provides the general standard of auditor independence:[2]

> The Commission will not recognize an accountant as independent, with respect to an audit client, if the accountant is not, or a reasonable investor with knowledge of all relevant facts and circumstances would conclude that the accountant is not, capable of exercising objective and impartial judgment on all issues encompassed within the accountant's engagement.  In determining whether an accountant is independent, the Commission will consider all relevant circumstances, including all relationships between the accountant and the audit client, and not just those relating to reports filed with the Commission.

b.      With respect to IA clients, Advisers Act Rule 206(4)-2(d)(3) [17 C.F.R. § 275.206(4)-2(d)(3)] defines an independent public accountant as "a public

---

[2] The Preliminary Note to Rule 2-01 of Regulation S-X [17 C.F.R. § 210.2-01] states:

> In considering this standard [Rule 2-01(b)], the Commission looks in the first instance to whether a relationship or the provision of a service: Creates a mutual or conflicting interest between the accountant and the audit client; places the accountant in the position of auditing his or her own work; results in the accountant acting as management or an employee of the audit client; or places the accountant in a position of being an advocate for the audit client.

accountant that meets the standards of independence described in rule 2-01(b) and (c) of Regulation S-X" [17 C.F.R. § 210.2-01(b) and (c)].[3]

    c.    With respect to BD clients, Exchange Act Rule 17a-5(f)(1) [17 C.F.R. § 240.17a-5(f)(1)] requires an independent public accountant to "be qualified and independent in accordance with" Rule 2-01 of Regulation S-X [17 C.F.R. § 210.2-01].

20.    Rule 2-02(b) of Regulation S-X [17 C.F.R. § 210.2-02(b)] sets requirements for "[r]epresentations as to the audit included in accountants' reports."  Among those representations, "the ***accountant's report:*** (1) [s]hall state the applicable professional standards under which the audit was conducted . . ." (emphasis added).

21.    Rule 1-02(a)(1) of Regulation S-X [17 C.F.R. § 210.1-02(a)(1)] defines an "***accountant's report***, when used in regard to financial statements," as "a document in which an ***independent*** public or certified public accountant indicates the scope of the ***audit (or examination)*** which he has made and sets forth his opinion regarding the financial statements . . ." (emphasis added).

22.    Rule 1-02(d) of Regulation S-X [17 C.F.R. § 210.1-02(d)] defines an "***audit (or examination)***" as:

> [W]hen used in regard to financial statements of issuers as defined by Section 2(a)(7) of the Sarbanes-Oxley Act of 2002, [the term] means an examination of the financial statements ***by an independent accountant*** in accordance with the standards of the [PCAOB] for the purpose of expressing an opinion thereon.  When used in regard to financial statements of entities that are not issuers as defined by Section 2(a)(7) of [SOX], the term means an examination of the financial statements ***by an independent***

---

[3]  The Preliminary Note to Rule 2-01 of Regulation S-X [17 C.F.R. § 210.2-01] states, "Paragraphs (c)(1) through (c)(5) of this section reflect the application of the general standard [Rule 2-01(b)] to particular circumstances."

> ***accountant*** in accordance with either the standards of the PCAOB or U.S. generally accepted auditing standards ("U.S. GAAS") as specified or permitted in the regulations and forms applicable to those entities for the purpose of expressing an opinion thereon. ***The standards of the PCAOB and U.S. GAAS may be modified or supplemented by the Commission.***

(Emphasis added.)

23.     Rule 1-02(f) of Regulation S-X [17 C.F.R. § 210.1-02(f)] defines "***certified***, when used in regard to financial statements," as "examined and reported upon with an opinion expressed by an ***independent*** public or certified public accountant." (Emphasis added.)

24.     Rule 17a-5(i)(2)(i) under the Exchange Act [17 C.F.R. § 240.17a-5(i)(2)(i)] requires an independent public accountant's report to "[s]tate whether the examinations or review, as applicable, were made in accordance with the standards of the [PCAOB]."

25.     For audits over which the PCAOB has jurisdiction, both the PCAOB auditor independence requirements and the SEC's auditor independence rule apply.    The Commission Order Approving Proposed Ethics and Independence Rules Concerning Independence, Tax Services, and Contingent Fees (File No. PCAOB-2006-01) states:

> This requirement for the auditor to be independent encompasses the obligation to satisfy the independence criteria set out in the rules and the standards of the PCAOB, but also an obligation to satisfy all other independence criteria applicable to the engagement, including the independence criteria set out in the rules and regulations of the Commission.

Public Company Accounting Oversight Board; Order Approving Proposed Ethics and Independence Rules Concerning Independence, Tax Services, and Contingent Fees and Notice of Filing and Order Granting Accelerated Approval of the Amendment Delaying Implementation of Certain of these Rules, SEC Rel. No. 34-53677, 2006 WL 1866513, at *1 (Apr. 19, 2006).

26.     SOX Section 2(a)(10)(B) [15 U.S.C. § 7201(a)(10)(B)] defines "professional standards" as "auditing standards, standards for attestation engagements, quality control policies

and procedures, ethical and competency standards, and ***independence standards*** . . . that . . . the Commission determines . . . relate to the preparation or issuance of audit reports for issuers; and . . . are promulgated as rules of the Commission" (emphasis added).  Rule 2-01(b) of Regulation S-X [[17 C.F.R. § 210.2-01(b)] is a "professional standard" under Section 2(a)(10)(B) of SOX [15 U.S.C. § 7201(a)(10)(B)].

27.     The Commission created the Codification in 1982 as the "publication of a codification of certain existing Accounting Series Releases (ASRs)" previously issued by the Commission "by extracting those portions of the ASRs which provide current, meaningful guidance to registrants, ***independent accountants*** and others in complying with the Commission's requirements," and to be "updated by the issuance of [future] Financial Reporting Releases."  Codification of Financial Reporting Policies, Rel. No. FR-1, 34-18648, 47 FR 21,028, 1982 WL 590664, at *1-2 (April 15, 1982) (emphasis added).  The Codification's purpose "is to provide one document which is organized in a logical manner and which can be used as a reference for the Commission's current published positions on accounting and auditing matters related to financial reporting," and to "supplement[] the rules set forth in Regulations S-X and S-K by providing background and rationale for certain of the rules therein."  Id.

28.     With respect to auditor indemnification provisions specifically, the Commission has made its interpretation that such provisions impair auditor independence available publicly since at least 1982 in Section 602.02.f.i. of the Codification ("Indemnification by Client"), which states:

> When an accountant and his client, directly or through an affiliate, have entered into an agreement of indemnity which seeks to assure to the accountant immunity from liability for his own negligent acts, whether of omission or commission, one of the major stimuli to objective and unbiased consideration of the problems encountered in a particular engagement is removed or greatly weakened.  *Such condition must*

> *frequently induce a departure from the standards of objectivity and impartiality which the concept of independence implies.* In such difficult matters, for example, as the determination of the scope of audit necessary, existence of such an agreement may easily lead to the use of less extensive or thorough procedures than would otherwise be followed.  In other cases it may result in a failure to appraise with professional acumen the information disclosed by the examination.  *Consequently, the accountant cannot be recognized as independent for the purpose of certifying the financial statements of the corporation.*

(Emphasis added.)

29.     Although the introduction to Section 602.02 of the Codification (Section 602.02.a.) provides that "the guidelines and illustrations presented in this section cannot be, nor are they intended to be, definitive answers on any aspect of this subject," it further explains that they "are designed to apprise the practitioners of typical situations which have involved loss of independence, whether in appearance or in fact, and by so doing to place them on notice of these and similar potential threats to their independence."

30.     In addition, the Commission's Office of the Chief Accountant ("OCA") issued guidance on December 13, 2004, reiterating and confirming the Commission's "long standing view" in the Codification that:

> When an accountant and the audit client, directly or through an affiliate, enter into an agreement of indemnity which seeks to provide the accountant immunity from liability for their own negligent acts, whether of omission or commission, the accountant is not independent.  Further, including in engagement letters a clause that an issuer would release, indemnify or hold harmless from any liability and costs resulting from knowing misrepresentations by management would also impair the firm's independence.

Office of the Chief Accountant:  Application of the Commission's Rules on Auditor Independence Frequently Asked Questions ("OCA's FAQs"), "A. General standard of

independence [2-01(b)]" (issued Dec. 13, 2004), <u>available at</u>:  https://www.sec.gov/info/ accountants/ocafaqaudind080607.

31.     The Commission has stated, "When an independent accountant prepares a report for submission or filing with the Commission, the independent accountant would be considered to be representing that it has complied with the applicable federal securities laws and Commission rules and guidance . . . ." <u>Interpretation:  Commission Guidance Regarding the Public Company Accounting Oversight Board's Auditing and Related Professional Practice Standard No. 1</u>, Rel. No. 34-49708, 69 Fed. Reg. 29,064, 29,065, 2004 WL 1439831, at *3 (May 14, 2004).

32.     Other agencies (the Department of the Treasury, the Federal Reserve System, the Federal Deposit Insurance Corporation, the National Credit Union Administration, the Office of the Comptroller of the Currency, and the Office of Thrift Supervision) also issued guidance, recognizing the Commission's position that auditors that include indemnification provisions in engagement letters are not independent.  <u>See Interagency Advisory on the Unsafe and Unsound Use of Limitation of Liability Provisions in External Audit Engagement Letters</u>, <u>available at</u>: http://www.federalreserve.gov/boarddocs/srletters/2006/sr0604a1.pdf (2006) (discussing the Codification and OCA's FAQs quoted above).

**B.     ENGAGEMENT LETTERS CONTAINING INDEMNIFICATION PROVISIONS**

33.     In or around August 2018, Prager acquired **Auditing Firm 1**.  As a result of that acquisition, Prager began regularly auditing public issuers.  Prager's prior audit work had been limited to one public issuer, private companies, and IAs.

34.     From in or around December 11, 2017, to in or around October 28, 2020, Prager entered into 87 engagement letters (based on which Defendants collectively earned more than

14

$3,000,000 in fees) with the 62 SEC Registrant Clients, listed in **Exhibit 1**, for 62 audits, 11

exams, and 144 reviews, and those letters contained indemnification provisions.  For example, as

many as 77 of the engagement letters contained the following indemnification provision:

> In the event that we become obligated to pay any judgment, fine, penalty, or similar award or sanction; agree to pay any amount in settlement; and/or incur any costs including legal fees, as a result of a claim, investigation, or other proceeding instituted by any third party, including any governmental or quasi-governmental body, and if such obligation is a direct or indirect result of any inaccurate or incomplete information that you provide to us during the course of this engagement, and not any failure on our part to comply with professional standards, you agree to indemnify us, and hold us harmless as against such obligations, agreement and/or costs.

As many as 14 of the engagement letters also contained the following indemnification provision:

> Because of the importance of management's representations to an effective audit [or examination], the Company agrees to release and indemnify [Prager] and its personnel from any liability and costs relating to our services under this agreement attributable to any knowing misrepresentations by management.

35.     Once an auditor includes indemnification provisions in an engagement letter for

an audit, review, or exam, the auditor is no longer independent as such provisions "induce a

departure from the standards of objectivity and impartiality which the concept of independence

implies."  Section 602.02.f.i. of the Codification.  The firm's objectivity and impartiality come

into question because the auditor's "major stimuli to objective and unbiased consideration of the

problems encountered in a particular engagement is removed or greatly weakened."  Id.  Thus,

the auditor's incentive to conduct a thorough audit and question management regarding

management's representations is diminished because the auditor knows that he will be

indemnified for management misrepresentations.

### C.   DEFENDANTS' AUDIT REPORTS AND DEFENDANTS' CLIENTS' FILINGS WITH THE COMMISSION

36.     After conducting audits of its issuer and BD clients' financial statements, Prager provided those issuer and BD audit clients with audit reports, certifying their respective financial statements.  Prager entitled each of those audit reports, as required: "REPORT OF INDEPENDENT REGISTERED PUBLIC ACCOUNTING FIRM."  (Emphasis in the original.) In each such report, Prager stated, "We conducted our audits [or audit] in accordance with the standards of the PCAOB," and further stated, "We are a public accounting firm registered with the [PCAOB] **and are required to be independent with respect to the Company in accordance with the U.S. federal securities laws and the applicable rules and regulations of the Securities and Exchange Commission** . . . ." (Emphasis added).

37.     Prager's issuer and BD clients included Prager's audit reports (with the language quoted above in paragraph 36, including that those reports were reports of an independent registered public accounting firm, even though those engagements were conducted pursuant to engagement letters containing indemnification provisions) in the following filings with the Commission, which are identified further in **Exhibit 1**:

> a.     51 annual reports on Forms 10-K, 10-K/A, and 20-F, filed by the following 39 issuers, of which some had securities registered pursuant to Section 12 of the Exchange Act [15 U.S.C. § 78l] and therefore were reporting under Section 13(a) of the Exchange Act [15 U.S.C. § 78m(a)]; and others were reporting under Section 15(d) of the Exchange Act [15 U.S.C. § 78o(d)] either voluntarily or due to an effective registration statement under the Securities Act; with the relevant reporting provisions for each issuer identified in **Exhibit 1**:  **Issuer 1**, **Issuer 2**, **Issuer 3**,

**Issuer 5**, **Issuer 6**, **Issuer 7**, **Issuer 8**, **Issuer 10**, **Issuer 12**, **Issuer 13**, **Issuer 16**, **Issuer 18**, **Issuer 19**, **Issuer 20**, **Issuer 21**, **Issuer 22**, **Issuer 24**, **Issuer 25**, **Issuer 26**, **Issuer 27**, **Issuer 28**, **Issuer 29**, **Issuer 30**, **Issuer 32**, **Issuer 33**, **Issuer 34**, **Issuer 35**, **Issuer 36**, **Issuer 37**, **Issuer 39**, **Issuer 41**, **Issuer 42**, **Issuer 43**, **Issuer 44**, **Issuer 48**, **Issuer 49**, **Issuer 50**, **Issuer 51**, and **Issuer 52**;

b.  26 registration statements under the Securities Act on Forms S-1, S-1/A, S-4, S-4/A, F-1, and F-1/A and prospectuses on Forms 424B3, filed by the following 8 issuers (of which 2 issuers' registration statements never became effective):  **Issuer 17** (registration statement never became effective), **Issuer 33**, **Issuer 35**, **Issuer 37**, **Issuer 39**, **Issuer 43**, **Issuer 46** (registration statement never became effective), and **Issuer 48**;

c.  2 current reports on Forms 8-K and 8-K/A, filed by the following 2 issuers, both of which had securities registered pursuant to Section 12 of the Exchange Act [15 U.S.C. § 78l] at the time of filing these reports that included Prager audit reports:  **Issuer 36** and **Issuer 37**;

d.  9 offering statements under the Securities Act or post-qualification offering circular amendments on Forms 1-A and 1-A/A, filed by the following 1 issuer:  **Issuer 20**; and

e.  4 annual audited reports on Forms X-17A-5, filed by the following 4 BDs: **Broker-Dealer 1**, **Broker-Dealer 2**, **Broker-Dealer 3**, and **Broker-Dealer 4**.

38.     The above annual reports on Forms 10-K, 10-K/A, and 20-F contained certifications pursuant to 18 U.S.C. § 1350, as adopted by Section 906 of SOX, by the issuers' principal executive and financial officers, that the reports "fully compl[y] with the requirements of Section 13(a) or 15(d) of the Securities Exchange Act of 1934 . . . ."

39.     After conducting exams of client assets in the custody of an IA for its IA clients, Defendant Prager Metis CPAs, LLC prepared surprise exam reports, each entitled, "Report of Independent Accountant."  Prager's IA clients, **Investment Adviser 1**, **Investment Adviser 2**, **Investment Adviser 3**, and **Investment Adviser 4**, filed 11 Forms ADV-E with the Commission, attaching these surprise exam reports issued by Prager, as identified further in **Exhibit 1**.

40.     In addition, the following 46 issuer clients of the Defendants filed 150 quarterly reports on Forms 10-Q and 10-Q/A, which are identified further in **Exhibit 1** (including the relevant reporting provisions for each issuer, i.e., whether the issuer is reporting under Section 13(a) of the Exchange Act [15 U.S.C. § 78m(a)] and the rules thereunder, or under Section 15(d) of the Exchange Act [15 U.S.C. § 78o(d)] and the rules thereunder), that included interim financial statements that Prager had reviewed pursuant to engagement letters containing indemnification provisions:  **Issuer 1**; **Issuer 2**; **Issuer 3**; **Issuer 5**; **Issuer 6**; **Issuer 7**; **Issuer 8**; **Issuer 9**; **Issuer 10**; **Issuer 11**; **Issuer 12**; **Issuer 13**; **Issuer 14**; **Issuer 15**; **Issuer 16**; **Issuer 19**; **Issuer 21**; **Issuer 22**; **Issuer 23**; **Issuer 24**; **Issuer 25**; **Issuer 26**; **Issuer 27**; **Issuer 28**; **Issuer 29**; **Issuer 31**; **Issuer 32**; **Issuer 33**; **Issuer 34**; **Issuer 35**; **Issuer 37**; **Issuer 38**; **Issuer 39**; **Issuer 40**; **Issuer 41**; **Issuer 43**; **Issuer 44**; **Issuer 45**; **Issuer 47**; **Issuer 48**; **Issuer 49**; **Issuer 50**; **Issuer 51**; **Issuer 52**; **Issuer 53**; and **Issuer 54**.  Those quarterly reports on Forms 10-Q and 10-Q/A contained certifications by the issuers' principal executive and financial officers,

pursuant to 18 U.S.C. § 1350, as adopted by Section 906 of SOX, that the reports "fully compl[y] with the requirements of Section 13(a) or 15(d) of the Securities Exchange Act of 1934 . . . ."

41.     From July 2019 through February 2022, Defendants' issuer clients also made subsequent filings that opined on prior year financial statements, even though the engagements for the prior year financial statements were conducted pursuant to engagement letters containing indemnification provisions, and those subsequent filings included Prager audit reports with the language quoted above in paragraph 36.  Those subsequent filings, which are identified further in **Exhibit 1**, included:

a.     40 annual reports on Forms 10-K, 10-KT, 10-K/A, and 20-F, containing Section 1350 certifications described above, filed by the following 31 issuers, some of which had securities registered pursuant to Section 12 of the Exchange Act [15 U.S.C. § 78l] and therefore were reporting under Section 13(a) of the Exchange Act [15 U.S.C. § 78m(a)]; and others were reporting under Section 15(d) of the Exchange Act [15 U.S.C. § 78o(d)] either voluntarily or due an effective registration statement under the Securities Act, (8 of the audit reports also opined on current year financial statements where the audits were performed pursuant to engagement letters containing indemnification provisions, so those reports were counted above as well): **Issuer 1**, **Issuer 2**, **Issuer 3**, **Issuer 5**, **Issuer 8**, **Issuer 10**, **Issuer 12**, **Issuer 13**, **Issuer 16**, **Issuer 18**, **Issuer 19**, **Issuer 21**, **Issuer 25**, **Issuer 26**, **Issuer 28**, **Issuer 29**, **Issuer 32**, **Issuer 33**, **Issuer 34**, **Issuer 35**, **Issuer 37**, **Issuer 39**, **Issuer 41**, **Issuer 42**, **Issuer 43**, **Issuer 44**, **Issuer 48**, **Issuer 49**, **Issuer 50**, **Issuer 51**, and **Issuer 52**;

      b.      19 registration statements under the Securities Act on Forms S-1, S-1/A, F-1, and F-1/A and prospectuses on Forms 424B1 and 424B3, filed by the following 4 issuers (of which 1 issuer's registration statements never became effective):  **Issuer 4** (registration statement never became effective), **Issuer 25**, **Issuer 34**, and **Issuer 37**; and

      c.      1 current report on Form 8-K/A, filed by the following 1 issuer, which had securities registered pursuant to Section 12 of the Exchange Act [15 U.S.C. § 78l] at the time of filing this report that included a Prager audit report:  **Issuer 36**.

42.     With respect to **Issuer 37**'s filings above in Section V.C. of this Complaint, as set forth in **<u>Exhibit 1</u>**, **Issuer 37** initially reported under Section 13(a) of the Exchange Act [15 U.S.C. § 78m(a)] and the rules thereunder because it had securities registered under Section 12 of the Exchange Act [15 U.S.C. § 78l].  However, in or around April 2, 2019, it filed a Form 25-NSE to terminate its registration under Section 12 of the Exchange Act [15 U.S.C. § 78l].  The Form 10-Q filed in or around April 15, 2019 still was subject to the reporting obligations under Section 13(a) of the Exchange Act [15 U.S.C. § 78m(a)] and the rules thereunder because it continued to have securities registered under Section 12 of the Exchange Act [15 U.S.C. § 78l] for that reporting period.  However, after that filing, **Issuer 37** began reporting under Section 15(d) of the Exchange Act [15 U.S.C. § 78o(d)] and the rules thereunder.

43.     Finally, the following 4 issuer clients of Defendant Prager Metis CPAs, LLC made 18 filings with the Commission on Forms F-1/A, F-3, S-3, S-8, 424B3, and 424B5, which incorporated Defendant Prager Metis CPAs, LLC's audit reports by reference:  **Issuer 8**, **Issuer 17**, **Issuer 42**, and **Issuer 43**.

### D.   DEVELOPMENTS AFTER PRAGER IDENTIFIED THE INDEMNIFICATION PROVISIONS IN ENGAGEMENT LETTERS

44.   In approximately January 2019, **New BD Engagement Partner** brought the issue of the indemnifications in the engagement letters of SEC Registrant Clients to the attention of Prager senior management, including the **Partner-in-Charge of Prager's Public Company Audit Practice**; the **Partner-in-Charge of Assurance**; and the partner who oversaw quality controls.

45.   In or around January 7, 2019, **New BD Engagement Partner** emailed the **Partner-in-Charge of Assurance**, and wrote in part: "Should we tell [other partner] that he needs to change his?  [Other partner] also had the indemnity paragraph in there which I thought impaired our independence which is why I took it out of mine."

46.   In or around January 9, 2019, **New BD Engagement Partner** emailed the **Partner-in-Charge of Assurance**, copying the **Partner-in-Charge of Prager's Public Company Audit Practice** at the time, and wrote:

> On page 12/16 – there is a section called "indemnity" – I thought those were supposed to be removed from PCAOB letters as that can impair independence.  In the [**Broker-Dealer 3**] letter that I had previously sent to you, I removed that entire section.
>
> Here is the guidance from the BD PPC template –
>
> [x] An auditor would not be considered independent if a client has agreed to indemnify the auditor against liability from an engagement, whether that liability arises from the auditor's own negligence or material misrepresentations made by management.  Therefore, the engagement letter should not include an indemnification clause or language of that nature.

47.   Despite being on notice since at least early January 2019 that Prager's letter template contained language that impaired independence, Prager entered into 51 additional engagement letters with issuers, BDs, and IAs containing indemnification provisions after January 2019, as identified further in **Exhibit 1**.

48.     In or around June 29, 2019, **New Issuer Engagement Partner** emailed the **Partner-in-Charge of Prager's Public Company Audit Practice** and the Co-Managing Partner of Prager, and also raised the issue of indemnification provisions in engagement letters for issuer clients to their attention.  In that email, **New Issuer Engagement Partner** wrote in part:

> [A]ttach[ed] are the engagement letter[s] base[d on] the template you sent. I have added a paragraph addressing independence.  I saw an indemnity clause in your engagement letter.  As I recall, for issuer clients an indemnity clause may be a problem with the PCAOB/SEC.

49.     Despite the extensive Commission guidance and the explicit warnings of both **New BD Engagement Partner** and **New Issuer Engagement Partner**, Prager did not update its public company audit engagement letter template to remove the indemnification provisions until in or around December 9, 2019.  On that date, the **Partner-in-Charge of Prager's Public Company Audit Practice** circulated an email to the Public Company Audit Practice, copying a partner in the Assurance Department who was the Engagement Quality Review ("EQR") partner with respect to numerous SEC Registrant Clients.  That email attached an updated template, and in it, the **Partner-in-Charge of Prager's Public Company Audit Practice** stated in part, "Based upon my review with our legal counsel at our insurance carrier, please find attached a revised audit engagement letter for SEC clients.  Please use this letter for all new and unissued engagements" (i.e., only new engagements or engagements for which an audit report had not been issued yet).  That email, circulating the new template in or around December 9, 2019, did not state that the indemnification provisions had been removed from the template, did not explain that historical inclusion of such indemnification provisions had impaired Prager's independence, and did not suggest any remedial measures.  Moreover, it appears the **Partner-in-Charge of Prager's Public Company Audit Practice** did not raise the issue at a meeting or in any other communications.

50.     After Prager circulated the new template on December 9, 2019, Defendant Prager Metis CPAs, LLC subsequently signed six new engagement letters that contained indemnification provisions with the following clients:

a.     an engagement letter that contained indemnification provisions with **Investment Adviser 4** in or around December 23, 2019;

b.     an engagement letter that contained indemnification provisions with **Issuer 8** in or around January 17, 2020;

c.     an engagement letter that contained indemnification provisions with **Investment Adviser 1** in or around June 30, 2020;

d.     an engagement letter that contained indemnification provisions with **Investment Adviser 2** in or around June 30, 2020;

e.     an engagement letter that contained indemnification provisions with **Investment Adviser 4** in or around July 7, 2020; and

f.     an engagement letter that contained indemnification provisions with **Issuer 32** in or around October 28, 2020.

51.     During the December 2017 to October 2020 time period, Prager never implemented a policy prohibiting indemnification provisions in audit engagement letters with SEC registrants.  In either late 2022 or early 2023, Prager implemented a quality control manual requiring use of an audit engagement letter template that does not include indemnification provisions.

**E.    LACK OF COMMUNICATIONS WITH CLIENTS, THEIR AUDIT COMMITTEES, OR THOSE CHARGED WITH GOVERNANCE AT THE CLIENTS**

52.    Prager failed to disclose the independence impairment caused by the indemnification provisions to the SEC Registrant Clients, their audit committees, or those charged with governance at the clients.

53.    For its issuer and BD clients, Prager was required to comply with PCAOB Rule 3526, which required Prager to at least annually, communicate in writing with the audit committee of the client all relationships between Prager and the client that "may reasonably be thought to bear on independence," discuss the potential effects of those relationships on Prager's independence, affirm in writing that Prager was independent, and document its discussion with the audit committee of the audit client.  See PCAOB Rule 3526(b) (Communication with Audit Committees Concerning Independence).  Thus, PCAOB Rule 3526 required Prager to provide notice that the indemnification provisions in its engagement letters with its issuer and BD clients were impermissible, and as a result, Prager was not independent for the relevant engagements.

54.    Although the SEC Registrant Clients identified in **Exhibit 1** (many of whom are quoted on OTC Link[4]) signed the engagement letters containing indemnification provisions, Prager never identified the indemnity relationship as a relationship that could reasonably be thought to bear on its independence to the relevant SEC Registrant Clients, their audit committees, or those charged with governance at the clients.  And, in some written communications, Prager affirmatively said it was not aware of any relationships that may reasonably be thought to bear on independence.  For example, in or around October 1, 2018,

---

[4] OTC Link's parent company is OTC Market Groups, Inc.  The platform has 3 market tiers:  the OTCQX, the OTCQB, and the Pink.

Defendant Prager Metis CPAs, LLC sent a letter to the Board of Directors of **Issuer 5**, stating that PCAOB Rule 3526 "requires that we disclose to you in writing, at least annually, all relationships between our firm . . . and your company . . . that may reasonably be thought to bear on independence.  The following is a description of such relationships . . . ***None***[.]  We confirm that we are independent of the Company in compliance with Rule 3520 and within the meaning of the federal securities laws administered by the Securities and Exchange Commission." (Emphasis in original.)

      **F.**    **PCAOB INSPECTION**

      55.    On September 11, 2020, the PCAOB sent two inspection comment forms to Prager:  the first identified the inclusion of indemnification provisions in the audit engagement letter of one issuer client of Defendant Prager Metis CPAs, LLC, **Issuer 43**, as an independence deficiency; and the second identified the inclusion of indemnification provisions in the audit engagement letter of one issuer client of Defendant Prager Metis CPAs LLP, **Issuer 21**, as an independence deficiency.

      56.    In each of these inspection comment forms, the PCAOB stated the following under the section, "PCAOB Comment – Deficiency," with a footnote at the end of the below statement referring to the OCA's FAQs:

> The Firm does not appear to be independent of the Issuer within the meaning of, and as required by, the Securities and Exchange Commission's Rules on Auditor Independence.  Specifically, the indemnification provision included in the firm's engagement letter with the issuer violates the independence criteria set out in Rule 2-01(b) of Regulation S-X.

      57.    In or around September 25, 2020, Defendant Prager Metis CPAs LLP responded to the PCAOB inspection comment form with respect to **Issuer 21**, and in or around October 6, 2020, Defendant Prager Metis CPAs, LLC responded to the PCAOB inspection comment form

with respect to **Issuer 43**.  In responding to these PCAOB inspection comment forms, Prager admitted the indemnification provisions were in engagement letter templates and that after Prager discussed the issue with its insurance carrier's legal counsel in November 2019, it immediately circulated a revised audit engagement letter template removing the indemnification provisions.  Prager failed to inform the PCAOB that it had included these provisions since 2017 and that Prager's management had been on notice of the issue since at least early January 2019. Defendant Prager Metis CPAs, LLC also failed to inform the PCAOB in its response that, after it circulated the new engagement letter template, it subsequently signed 5 new engagement letters that contained indemnification provisions between in or around December 23, 2019 and in or around July 7, 2020, as described above in paragraph 50 (in addition to a sixth engagement letter containing indemnification provisions that was signed in or around October 28, 2020, after Defendant Prager Metis CPAs, LLC had responded to the PCAOB).

58.     Even after receiving these comment letters in September 2020, Defendant Prager Metis CPAs, LLC signed one more engagement letter containing indemnification provisions with **Issuer 32** in or around October 28, 2020.

G.      **MATERIALITY**

59.     Prager was retained by the 62 SEC Registrant Clients to conduct audits and reviews of the issuer and BD clients' financial statements, and exams of the client assets under custody of an IA for the IA clients, as an independent accountant as required under the federal securities laws in order to provide accurate and complete financial information for investors; and Prager purported to be independent in conducting these audits, reviews, and exams, when it was not independent.  Further, as alleged above, some of Prager's clients included (or incorporated by reference) Prager accountant's reports, in which Prager purported to be independent, in

certain filings with the Commission.  In addition, in annual and quarterly reports filed with the Commission, Prager's issuer clients included certifications by their principal executive and financial officers that the reports fully complied with Exchange Act Section 13(a) or 15(d) requirements, which include requirements with respect to independent accountants auditing, reviewing, or certifying the financial statements included in those reports.  A reasonable investor with knowledge of all relevant facts and circumstances would consider as material:  that Prager was not independent when it was purporting to be independent; that Prager was not "capable of exercising objective and impartial judgment," as a result of the indemnification provisions in the engagement letters; and that Prager's issuer and broker dealer clients' financial statements and client assets in the custody of an investment adviser had not been audited, reviewed, certified, or examined by an independent accountant, as required under the federal securities laws.

## VI.    CLAIMS FOR RELIEF AGAINST DEFENDANTS

### COUNT I

**(Against Defendant Prager Metis CPAs, LLC and Defendant Prager Metis CPAs LLP)**

**Violations of Rule 2-02(b) of Regulation S-X with Respect to 42 Issuer Clients**

60.     The Commission repeats and realleges Paragraphs 1 through 59 of this Complaint and the information in the attached **Exhibit 1**.

61.     From in or around July 24, 2018 to in or around March 18, 2022, the following 40 issuer clients of the Defendant Prager Metis CPAs, LLC made filings with the Commission that included or incorporated by reference Defendant Prager Metis CPAs, LLC's audit reports, each purporting to be a report of an independent registered public accounting firm, when Defendant Prager Metis CPAs, LLC had conducted the relevant audits pursuant to engagement letters containing indemnification provisions:  **Issuer 1, Issuer 2, Issuer 3, Issuer 4, Issuer 5, Issuer 6, Issuer 7, Issuer 8, Issuer 10, Issuer 12, Issuer 13, Issuer 17, Issuer 18, Issuer 19, Issuer 20,**

**Issuer 22, Issuer 24, Issuer 25, Issuer 26, Issuer 27, Issuer 28, Issuer 29, Issuer 30, Issuer 32, Issuer 33, Issuer 34, Issuer 35, Issuer 36, Issuer 37, Issuer 39, Issuer 41, Issuer 42, Issuer 43, Issuer 44, Issuer 46, Issuer 48, Issuer 49, Issuer 50, Issuer 51,** and **Issuer 52**.

62.     From in or around July 9, 2019 to in or around December 16, 2020, the following 2 issuer clients of the Defendant Prager Metis CPAs LLP made filings with the Commission that included Defendant Prager Metis CPAs LLP's audit reports, each purporting to be a report of an independent registered public accounting firm, when Defendant Prager Metis CPAs LLP had conducted the relevant audits pursuant to engagement letters containing indemnification provisions: **Issuer 16** and **Issuer 21**.

63.     Defendants, by failing to be independent in accordance with Rule 2-01(b) of Regulation S-X [17 C.F.R. § 210.2-01(b)] and engaging in the conduct described above, violated the accountant's reports provisions of Rule 2-02(b) of Regulation S-X [17 C.F.R. § 210.2-02(b)], by misstating as to the audits included in the accountant's reports (which certified the financial statements) that those audits the Defendants conducted on behalf of these issuer clients were conducted by an independent auditor in accordance with the applicable professional standards.

64.     By reason of the foregoing, Defendants, directly and indirectly, violated and unless enjoined, are reasonably likely to continue to violate, Rule 2-02(b) of Regulation S-X [17 C.F.R. § 210.2-02(b)].

## COUNT II

### (Against Defendant Prager Metis CPAs, LLC)

### Aiding and Abetting Violations of Section 13(a) and 15(d) of the Exchange Act and Rules 13a-1, 13a-11, 13a-13, 15d-1, and 15d-13 thereunder by Issuer 37

65.     The Commission repeats and realleges Paragraphs 1 through 59 of this Complaint and the information in the attached **Exhibit 1**.

66.     Section 13(a) of the Exchange Act [15 U.S.C. § 78m(a)] and Rule 13a-1 [17 C.F.R. § 240.13a-1] thereunder require issuers with securities registered under Section 12 of the Exchange Act [15 U.S.C. § 78l] to file accurate and complete annual reports with the Commission on Forms 10-K or 20-F that include financial statements audited and certified by an independent public accountant.

67.     Section 13(a) of the Exchange Act [15 U.S.C. § 78m(a)] and Rule 13a-11 [17 C.F.R. § 240.13a-11] thereunder require issuers with securities registered under Section 12 of the Exchange Act [15 U.S.C. § 78l] to file accurate and complete current reports with the Commission on Forms 8-K.

68.     Section 13(a) of the Exchange Act [15 U.S.C. § 78m(a)] and Rule 13a-13 [17 C.F.R. § 240.13a-13] thereunder require issuers with securities registered under Section 12 of the Exchange Act [15 U.S.C. § 78l] to file accurate and complete quarterly reports with the Commission on Forms 10-Q or 10-Q/A that include interim financial statements reviewed by an independent public accountant.  Rule 10-01(d) of Regulation S-X [17 C.F.R. § 210.10-01(d)] also requires the interim financial statements included in a Form 10-Q to be reviewed by an independent public accountant.

69.     Section 15(d) of the Exchange Act [15 U.S.C. § 78o(d)] and Rules 15d-1 and 15d-13 [17 C.F.R. §§ 240.15d-1 and 240.15d-13] thereunder, require, among other things, that issuers with effective registration statements or reporting voluntarily under Section 15(d) of the Exchange Act [15 U.S.C. § 78o(d)], file accurate and complete reports with the Commission that are required by Section 13(a) of the Exchange Act [15 U.S.C. § 78m(a)] for each class of securities covered by the registration statement, including annual reports on Forms 10-K or 20-F that include financial statements audited and certified by an independent public accountant and

quarterly reports on Forms 10-Q that include interim financial statements reviewed by an independent public accountant.  If an issuer is a voluntary filer, its filings with the Commission still must contain accurate and complete information.  Rule 10-01(d) of Regulation S-X [17 C.F.R. § 210.10-01(d)] also requires the interim financial statements included in a Form 10-Q to be reviewed by an independent public accountant.

70.     From in or around October 16, 2017 to in or around April 15, 2019, **Issuer 37**, filed 1 annual report on Form 10-K, 4 quarterly reports on Forms 10-Q, and 1 current report on Form 8-K/A with the Commission, for periods where **Issuer 37** had securities registered under Section 12 of the Exchange Act [15 U.S.C. § 78l].  The annual report on Form 10-K and the current report on Form 8-K/A both included Defendant Prager Metis CPAs, LLC's audit reports, each purporting to be a report of an independent registered public accounting firm, for financial statements that Defendant Prager Metis CPAs, LLC had audited pursuant to engagement letters containing indemnification provisions, and the annual report on Form 10-K contained a certification pursuant to 18 U.S.C. § 1350, as adopted by Section 906 of SOX, by the principal executive and financial officer, misstating that the report "fully complies with the requirements of Section 13(a) or 15(d) of the Securities Exchange Act of 1934 . . . ," in violation of Section 13(a) of the Exchange Act [15 U.S.C. § 78m(a)] and Rules 13a-1 and 13a-11 [17 C.F.R. §§ 240.13a-1 and 240.13a-11] thereunder, given Defendant Prager Metis CPAs, LLC was not independent when it conducted the audits of the financial statements due to the indemnification provisions in the engagement letters.

71.     The 4 quarterly reports on Forms 10-Q filed by **Issuer 37** included interim financial statements that Defendant Prager Metis CPAs, LLC had reviewed pursuant to engagement letters containing indemnification provisions, and also included certifications by the

issuers' principal executive and financial officers, pursuant to 18 U.S.C. § 1350, as adopted by Section 906 of SOX, misstating that the reports "fully compl[y] with the requirements of Section 13(a) or 15(d) of the Securities Exchange Act of 1934 . . . ," in violation of Section 13(a) of the Exchange Act [15 U.S.C. § 78m(a)] and Rule 13a-13 [17 C.F.R. § 240.13a-13] thereunder, given Defendant Prager Metis CPAs, LLC was not independent when it conducted the reviews of the interim financial statements due to the indemnification provisions in the engagement letters.

72.     From in or around August 29, 2019 to in or around August 31, 2020, **Issuer 37** also filed 2 annual reports on Forms 10-K and 1 quarterly report on Form 10-Q with the Commission, when **Issuer 37** was reporting under Section 15(d) of the Exchange Act [15 U.S.C. § 78o(d)] and the rules thereunder.  The 2 annual reports on Forms 10-K included Defendant Prager Metis CPAs, LLC's audit reports, each purporting to be a report of an independent registered public accounting firm, for financial statements that Defendant Prager Metis CPAs, LLC had audited pursuant to engagement letters containing indemnification provisions; the 1 quarterly report on Form 10-Q included interim financial statements that Defendant Prager Metis CPAs, LLC had reviewed pursuant to an engagement letter containing indemnification provisions; and both the annual and quarterly reports filed with the Commission also contained certifications by the issuers' principal executive and financial officers, pursuant to 18 U.S.C. § 1350, as adopted by Section 906 of SOX, misstating that the reports "fully compl[y] with the requirements of Section 13(a) or 15(d) of the Securities Exchange Act of 1934 . . . ," in violation of Section 15(d) of the Exchange Act [15 U.S.C. § 78o(d)] and Rules 15d-1 and 15d-13 [17 C.F.R. §§ 240.15d-1 and 240.15d-13] thereunder, given Defendant Prager Metis CPAs, LLC was not independent when it conducted those audits of the financial statements and reviews of the interim financial statements due to the indemnification provisions in the engagement letters.

73.     By failing to be independent in accordance with Rule 2-01(b) of Regulation S-X [17 C.F.R. § 210.2-01(b)] and engaging in the conduct described above, Defendant Prager Metis CPAs, LLC knowingly or recklessly provided substantial assistance to, and thereby aided and abetted, **Issuer 37's** violations of Sections 13(a) and 15(d) of the Exchange Act [15 U.S.C. §§ 78m(a) and 78o(d)] and Rules 13a-1, 13a-11, 13a-13, 15d-1, and 15d-13 [17 C.F.R. §§ 240.13a-1, 240.13a-11, 240.13a-13, 240.15d-1, and 240.15d-13] thereunder.

74.     By reason of the foregoing, pursuant to Section 20(e) of the Exchange Act [15 U.S.C. § 78t(e)], Defendant Prager Metis CPAs, LLC aided and abetted, and unless enjoined, is reasonably likely to continue to aid and abet, violations of Sections 13(a) and 15(d) of the Exchange Act [15 U.S.C. §§ 78m(a) and 78o(d)] and Rules 13a-1, 13a-11, 13a-13, 15d-1, and 15d-13 [17 C.F.R. §§ 240.13a-1, 240.13a-11, 240.13a-13, 240.15d-1, and 240.15d-13] thereunder.

## COUNT III

### (Against Defendant Prager Metis CPAs, LLC)

### Aiding and Abetting Violations of Section 13(a) of the Exchange Act and Rules 13a-1 and 13a-11 thereunder by Issuer 36

75.     The Commission repeats and realleges Paragraphs 1 through 59 of this Complaint and the information in the attached **Exhibit 1**.

76.     Section 13(a) of the Exchange Act [15 U.S.C. § 78m(a)] and Rule 13a-1 [17 C.F.R. § 240.13a-1] thereunder require issuers with securities registered under Section 12 of the Exchange Act [15 U.S.C. § 78l] to file accurate and complete annual reports with the Commission on Forms 10-K or 20-F that include financial statements audited and certified by an independent public accountant.

77.     Section 13(a) of the Exchange Act [15 U.S.C. § 78m(a)] and Rule 13a-11 [17 C.F.R. § 240.13a-11] thereunder require issuers with securities registered under Section 12 of the Exchange Act [15 U.S.C. § 78l] to file accurate and complete current reports with the Commission on Forms 8-K.

78.     From in or around July 18, 2019 to in or around April 14, 2021, 1 of Defendant Prager Metis CPAs, LLC's issuer clients with securities registered under Section 12 of the Exchange Act [15 U.S.C. § 78l], **Issuer 36**, filed an annual report on Form 10-K and 2 current reports on Forms 8-K and 8-K/A with the Commission that included Defendant Prager Metis CPAs, LLC's audit reports, each purporting to be a report of an independent registered public accounting firm, for financial statements that Defendant Prager Metis CPAs, LLC had audited pursuant to engagement letters containing indemnification provisions, and the annual report on Form 10-K contained a certification pursuant to 18 U.S.C. § 1350, as adopted by Section 906 of SOX, by the principal executive and financial officer, misstating that the report "fully complies with the requirements of Section 13(a) or 15(d) of the Securities Exchange Act of 1934 . . . ," in violation of Section 13(a) of the Exchange Act [15 U.S.C. § 78m(a)] and Rules 13a-1 and 13a-11 [17 C.F.R. §§ 240.13a-1 and 240.13a-11] thereunder, given Defendant Prager Metis CPAs, LLC was not independent when it conducted the audits of the financial statements due to the indemnification provisions in the engagement letters.

79.     By failing to be independent in accordance with Rule 2-01(b) of Regulation S-X [17 C.F.R. § 210.2-01(b)] and engaging in the conduct described above, Defendant Prager Metis CPAs, LLC knowingly or recklessly provided substantial assistance to, and thereby aided and abetted, **Issuer 36's** violations of Section 13(a) of the Exchange Act [15 U.S.C. § 78m(a)] and Rules 13a-1 and 13a-11 [17 C.F.R. §§ 240.13a-1 and 240.13a-11] thereunder.

80.     By reason of the foregoing, pursuant to Section 20(e) of the Exchange Act [15 U.S.C. § 78t(e)], Defendant Prager Metis CPAs, LLC aided and abetted, and unless enjoined, is reasonably likely to continue to aid and abet, violations of Section 13(a) of the Exchange Act [15 U.S.C. § 78m(a)] and Rules 13a-1 and 13a-11 [17 C.F.R. §§ 240.13a-1 and 240.13a-11] thereunder.

## COUNT IV

### (Against Defendant Prager Metis CPAs, LLC and Defendant Prager Metis CPAs LLP)

### Aiding and Abetting Violations of Section 13(a) of the Exchange Act and Rules 13a-1 and 13a-13 thereunder by 26 Issuer Clients

81.     The Commission repeats and realleges Paragraphs 1 through 59 of this Complaint and the information in the attached **Exhibit 1**.

82.     Section 13(a) of the Exchange Act [15 U.S.C. § 78m(a)] and Rule 13a-1 [17 C.F.R. § 240.13a-1] thereunder require issuers with securities registered under Section 12 of the Exchange Act [15 U.S.C. § 78l] to file accurate and complete annual reports with the Commission on Forms 10-K or 20-F that include financial statements audited and certified by an independent public accountant.

83.     Section 13(a) of the Exchange Act [15 U.S.C. § 78m(a)] and Rule 13a-13 [17 C.F.R. § 240.13a-13] thereunder require issuers with securities registered under Section 12 of the Exchange Act [15 U.S.C. § 78l] to file accurate and complete quarterly reports with the Commission on Forms 10-Q or 10-Q/A that include interim financial statements reviewed by an independent public accountant.  Rule 10-01(d) of Regulation S-X [17 C.F.R. § 210.10-01(d)] also requires the interim financial statements included in a Form 10-Q to be reviewed by an independent public accountant.

84.     From in or around January 15, 2019 to in or around February 14, 2022, 25 of Defendant Prager Metis CPAs, LLC's issuer clients with securities registered under Section 12 of the Exchange Act [15 U.S.C. § 78l], **Issuer 2**, **Issuer 3**, **Issuer 6**, **Issuer 7**, **Issuer 8**, **Issuer 10**, **Issuer 12**, **Issuer 13**, **Issuer 22**, **Issuer 24**, **Issuer 25**, **Issuer 26**, **Issuer 27**, **Issuer 28**, **Issuer 32**, **Issuer 33**, **Issuer 34**, **Issuer 35**, **Issuer 39**, **Issuer 43**, **Issuer 44**, **Issuer 49**, **Issuer 50**, **Issuer 51**, and **Issuer 52**, filed 52 annual reports on Forms 10-K and 10-K/A with the Commission that included Defendant Prager Metis CPAs, LLC's audit reports, each purporting to be a report of an independent registered public accounting firm, for financial statements that Defendants had audited pursuant to engagement letters containing indemnification provisions, as well as certifications pursuant to 18 U.S.C. § 1350, as adopted by Section 906 of SOX, by the principal executive and financial officers, misstating that the reports "fully compl[y] with the requirements of Section 13(a) or 15(d) of the Securities Exchange Act of 1934 . . . ," in violation of Section 13(a) of the Exchange Act [15 U.S.C. § 78m(a)] and Rule 13a-1 [17 C.F.R. § 240.13a-1] thereunder, given Defendant Prager Metis CPAs, LLC was not independent when it conducted the audits of the issuers' financial statements due to the indemnification provisions in the engagement letters.

85.     From in or around July 9, 2019 to in or around June 29, 2020, 1 of Defendant Prager Metis CPAs LLP's issuer clients with securities registered under Section 12 of the Exchange Act [15 U.S.C. § 78l], **Issuer 21**, filed 2 annual reports on Forms 10-K with the Commission that included Defendant Prager Metis CPAs LLP's audit reports, each purporting to be a report of an independent registered public accounting firm, for financial statements that Defendant Prager Metis CPAs LLP had audited pursuant to an engagement letter containing indemnification provisions, as well as certifications pursuant to 18 U.S.C. § 1350, as adopted by

Section 906 of SOX, by the principal executive and financial officers, misstating that the reports "fully compl[y] with the requirements of Section 13(a) or 15(d) of the Securities Exchange Act of 1934 . . . ," in violation of Section 13(a) of the Exchange Act [15 U.S.C. § 78m(a)] and Rule 13a-1 [17 C.F.R. § 240.13a-1] thereunder, given Defendant Prager Metis CPAs LLP was not independent when it conducted the audits of **Issuer 21's** financial statements due to the indemnification provisions in the engagement letter.

86.    From in or around October 22, 2018 to in or around August 24, 2021, the 25 of Defendant Prager Metis CPAs, LLC's issuer clients with securities registered under Section 12 of the Exchange Act [15 U.S.C. § 78l], **Issuer 2**, **Issuer 3**, **Issuer 6**, **Issuer 7**, **Issuer 8**, **Issuer 10**, **Issuer 12**, **Issuer 13**, **Issuer 22**, **Issuer 24**, **Issuer 25**, **Issuer 26**, **Issuer 27**, **Issuer 28**, **Issuer 32**, **Issuer 33**, **Issuer 34**, **Issuer 35**, **Issuer 39**, **Issuer 43**, **Issuer 44**, **Issuer 49**, **Issuer 50**, **Issuer 51**, and **Issuer 52**, also filed 90 quarterly reports on Forms 10-Q and 10-Q/A with the Commission that included interim financial statements that Defendant Prager Metis CPAs, LLC had reviewed pursuant to engagement letters containing indemnification provisions, and that also included certifications by the issuers' principal executive and financial officers, pursuant to 18 U.S.C. § 1350, as adopted by Section 906 of SOX, misstating that the reports "fully compl[y] with the requirements of Section 13(a) or 15(d) of the Securities Exchange Act of 1934 . . . ," in violation of Section 13(a) of the Exchange Act [15 U.S.C. § 78m(a)] and Rule 13a-13 [17 C.F.R. § 240.13a-13] thereunder, given Defendant Prager Metis CPAs, LLC was not independent when it conducted the reviews of the interim financial statements due to the indemnification provisions in the engagement letters.

87.    From in or around July 26, 2019 to in or around November 5, 2019, 1 of Defendant Prager Metis CPAs LLP's issuer clients with securities registered under Section 12 of

the Exchange Act [15 U.S.C. § 78l], **Issuer 21**, also filed 2 quarterly reports on Forms 10-Q with the Commission that included interim financial statements that 1 of Defendant Prager Metis CPAs LLP had reviewed pursuant to an engagement letter containing indemnification provisions, and that also included certifications by **Issuer 21's** principal executive and financial officers, pursuant to 18 U.S.C. § 1350, as adopted by Section 906 of SOX, misstating that the reports "fully compl[y] with the requirements of Section 13(a) or 15(d) of the Securities Exchange Act of 1934 . . . ," in violation of Section 13(a) of the Exchange Act [15 U.S.C. § 78m(a)] and Rule 13a-13 [17 C.F.R. § 240.13a-13] thereunder, given 1 of Defendant Prager Metis CPAs LLP was not independent when it conducted the reviews of the interim financial statements due to the indemnification provisions in the engagement letter.

88.     By failing to be independent in accordance with Rule 2-01(b) of Regulation S-X [17 C.F.R. § 210.2-01(b)] and engaging in the conduct described above, Defendants knowingly or recklessly provided substantial assistance to, and thereby aided and abetted, these issuer clients' violations of Section 13(a) of the Exchange Act [15 U.S.C. § 78m(a)] and Rules 13a-1 and 13a-13 [17 C.F.R. §§ 240.13a-1 and 240.13a-13] thereunder.

89.     By reason of the foregoing, pursuant to Section 20(e) of the Exchange Act [15 U.S.C. § 78t(e)], Defendants aided and abetted, and unless enjoined, are reasonably likely to continue to aid and abet, violations of Section 13(a) of the Exchange Act [15 U.S.C. § 78m(a)] and Rules 13a-1 and 13a-13 [17 C.F.R. §§ 240.13a-1 and 240.13a-13] thereunder.

## COUNT V

### (Against Defendant Prager Metis CPAs, LLC and Defendant Prager Metis CPAs LLP)

### Aiding and Abetting Violations of Section 15(d) of the Exchange Act and Rules 15d-1 and 15d-13 thereunder by 7 Issuer Clients

90.     The Commission repeats and realleges Paragraphs 1 through 59 of this Complaint and the information in the attached **Exhibit 1**.

91.     Section 15(d) of the Exchange Act [15 U.S.C. § 78o(d)] and Rules 15d-1 and 15d-13 [17 C.F.R. §§ 240.15d-1 and 240.15d-13] thereunder, require, among other things, that issuers with effective registration statements or reporting voluntarily under Section 15(d) of the Exchange Act [15 U.S.C. § 78o(d)], file accurate and complete reports with the Commission that are required by Section 13(a) of the Exchange Act [15 U.S.C. § 78m(a)] for each class of securities covered by the registration statement, including annual reports on Forms 10-K or 20-F that include financial statements audited and certified by an independent public accountant and quarterly reports on Forms 10-Q that include interim financial statements reviewed by an independent public accountant.  If an issuer is a voluntary filer, its filings with the Commission still must contain accurate and complete information.  Rule 10-01(d) of Regulation S-X [17 C.F.R. § 210.10-01(d)] also requires the interim financial statements included in a Form 10-Q to be reviewed by an independent public accountant.

92.     From in or around December 11, 2018 to in or around June 29, 2021, 6 of Defendant Prager Metis CPAs, LLC's issuer clients with effective registration statements or reporting voluntarily under Section 15(d) of the Exchange Act [15 U.S.C. § 78o(d)], **Issuer 1**, **Issuer 5**, **Issuer 19**, **Issuer 29**, **Issuer 41**, and **Issuer 48**, filed 15 annual reports on Forms 10-K, 10-K/A, and 10-KT with the Commission that included Defendant Prager Metis CPAs, LLC's audit reports, each purporting to be a report of an independent registered public accounting firm,

for financial statements that Defendant Prager Metis CPAs, LLC had audited pursuant to engagement letters containing indemnification provisions, and 23 quarterly reports on Forms 10-Q with the Commission that included interim financial statements that Defendant Prager Metis CPAs, LLC had reviewed pursuant to engagement letters containing indemnification provisions. Both the annual and quarterly reports filed with the Commission also contained certifications by the issuers' principal executive and financial officers, pursuant to 18 U.S.C. § 1350, as adopted by Section 906 of SOX, misstating that the reports "fully compl[y] with the requirements of Section 13(a) or 15(d) of the Securities Exchange Act of 1934 . . . ," in violation of Section 15(d) of the Exchange Act [15 U.S.C. § 78o(d)] and Rules 15d-1 and 15d-13 [17 C.F.R. §§ 240.15d-1 and 240.15d-13] thereunder, given Defendant Prager Metis CPAs, LLC was not independent when it conducted the audits of the financial statements and the reviews of the interim financial statements due to the indemnification provisions in the engagement letters.

93.    From in or around August 12, 2019 to in or around December 16, 2020, 1 of Defendant Prager Metis CPAs LLP's issuer clients with an effective registration statement or reporting voluntarily under Section 15(d) of the Exchange Act [15 U.S.C. § 78o(d)], **Issuer 16**, filed 2 annual reports on Forms 10-K with the Commission that included Defendant Prager Metis CPAs LLP's audit reports, each purporting to be a report of an independent registered public accounting firm, for financial statements that Defendant Prager Metis CPAs LLP had audited pursuant to an engagement letter containing indemnification provisions, and 1 quarterly report on Form 10-Q with the Commission that included interim financial statements that Defendant Prager Metis CPAs LLP had reviewed pursuant to an engagement letter containing indemnification provisions. Both the annual and quarterly reports filed with the Commission also contained certifications by **Issuer 16's** principal executive and financial officers, pursuant to

18 U.S.C. § 1350, as adopted by Section 906 of SOX, misstating that the reports "fully compl[y] with the requirements of Section 13(a) or 15(d) of the Securities Exchange Act of 1934 . . . ," in violation of Section 15(d) of the Exchange Act [15 U.S.C. § 78o(d)] and Rules 15d-1 and 15d-13 [17 C.F.R. §§ 240.15d-1 and 240.15d-13] thereunder, given Defendant Prager Metis CPAs LLP was not independent when it conducted the audits of the financial statements and the reviews of the interim financial statements due to the indemnification provisions in the engagement letter.

94.     By failing to be independent in accordance with Rule 2-01(b) of Regulation S-X [17 C.F.R. § 210.2-01(b)] and engaging in the conduct described above, Defendants knowingly or recklessly provided substantial assistance to, and thereby aided and abetted, these issuer clients' violations of Section 15(d) of the Exchange Act [15 U.S.C. § 78o(d)] and Rules 15d-1 and 15d-13 [17 C.F.R. §§ 240.15d-1 and 240.15d-13] thereunder.

95.     By reason of the foregoing, pursuant to Section 20(e) of the Exchange Act [15 U.S.C. § 78t(e)], Defendants aided and abetted, and unless enjoined, are reasonably likely to continue to aid and abet, violations of Section 15(d) of the Exchange Act [15 U.S.C. § 78o(d)] and Rules 15d-1 and 15d-13 [17 C.F.R. §§ 240.15d-1 and 240.15d-13] thereunder.

## COUNT VI

### (Against Defendant Prager Metis CPAs, LLC)

### Aiding and Abetting Violations of Section 13(a) of the Exchange Act and Rule 13a-1 thereunder by 4 Issuer Clients

96.     The Commission repeats and realleges Paragraphs 1 through 59 of this Complaint and the information in the attached **Exhibit 1**.

97.     Section 13(a) of the Exchange Act [15 U.S.C. § 78m(a)] and Rule 13a-1 [17 C.F.R. § 240.13a-1] thereunder require issuers with securities registered under Section 12 of the Exchange Act [15 U.S.C. § 78l] to file accurate and complete annual reports with the

Commission on Forms 10-K or 20-F that include financial statements audited and certified by an independent public accountant.

98.     From in or around March 15, 2019 to in or around April 27, 2021, 4 of Defendant Prager Metis CPAs, LLC's issuer clients with securities registered under Section 12 of the Exchange Act [15 U.S.C. § 78l], **Issuer 18**, **Issuer 20**, **Issuer 30**, and **Issuer 42**, filed 8 annual reports on Forms 10-K, 10-K/A, and 20-F with the Commission that included Defendant Prager Metis CPAs, LLC's audit reports, each purporting to be a report of an independent registered public accounting firm, for financial statements that Defendant Prager Metis CPAs, LLC had audited pursuant to engagement letters containing indemnification provisions, as well as certifications pursuant to 18 U.S.C. § 1350, as adopted by Section 906 of SOX, by the principal executive and financial officers, misstating that the reports "fully compl[y] with the requirements of Section 13(a) or 15(d) of the Securities Exchange Act of 1934 . . . ," in violation of Section 13(a) of the Exchange Act [15 U.S.C. § 78m(a)] and Rule 13a-1 [17 C.F.R. § 240.13a-1] thereunder, given Defendant Prager Metis CPAs, LLC was not independent when it conducted the audits of the issuers' financial statements due to the indemnification provisions in the engagement letters.

99.     By failing to be independent in accordance with Rule 2-01(b) of Regulation S-X [17 C.F.R. § 210.2-01(b)] and engaging in the conduct described above, Defendant Prager Metis CPAs, LLC knowingly or recklessly provided substantial assistance to, and thereby aided and abetted, these issuer clients' violations of Section 13(a) of the Exchange Act [15 U.S.C. § 78m(a)] and Rule 13a-1 [17 C.F.R. § 240.13a-1] thereunder.

100.    By reason of the foregoing, pursuant to Section 20(e) of the Exchange Act [15 U.S.C. § 78t(e)], Defendant Prager Metis CPAs, LLC aided and abetted, and unless enjoined, is

reasonably likely to continue to aid and abet, violations of Section 13(a) of the Exchange Act [15

U.S.C. § 78m(a)] and Rule 13a-1 [17 C.F.R. § 240.13a-1] thereunder.

## COUNT VII

**(Against Defendant Prager Metis CPAs, LLC)**

**Aiding and Abetting Violations of Section 13(a) of the Exchange Act and Rule 13a-13
thereunder by 9 Issuer Clients**

101.     The Commission repeats and realleges Paragraphs 1 through 59 of this Complaint

and the information in the attached **Exhibit 1**.

102.     Section 13(a) of the Exchange Act [15 U.S.C. § 78m(a)] and Rule 13a-13 [17

C.F.R. § 240.13a-13] thereunder require issuers with securities registered under Section 12 of the

Exchange Act [15 U.S.C. § 78l] to file accurate and complete quarterly reports with the

Commission on Forms 10-Q or 10-Q/A that include interim financial statements reviewed by an

independent public accountant.  Rule 10-01(d) of Regulation S-X [17 C.F.R. § 210.10-01(d)]

also requires the interim financial statements included in a Form 10-Q to be reviewed by an

independent public accountant.

103.     From in or around November 13, 2018 to in or around December 3, 2019, 9 of

Defendant Prager Metis CPAs, LLC's issuer clients with securities registered under Section 12

of the Exchange Act [15 U.S.C. § 78l], **Issuer 9**, **Issuer 11**, **Issuer 15**, **Issuer 23**, **Issuer 31**,

**Issuer 38**, **Issuer 40**, **Issuer 45**, and **Issuer 47**, filed 25 quarterly reports on Forms 10-Q with the

Commission that included interim financial statements that Defendant Prager Metis CPAs, LLC

had reviewed pursuant to engagement letters containing indemnification provisions, and that also

included certifications by the issuers' principal executive and financial officers, pursuant to 18

U.S.C. § 1350, as adopted by Section 906 of SOX, misstating that the reports "fully compl[y]

with the requirements of Section 13(a) or 15(d) of the Securities Exchange Act of 1934 . . . ," in

violation of Section 13(a) of the Exchange Act [15 U.S.C. § 78m(a)] and Rule 13a-13 [17 C.F.R. § 240.13a-13] thereunder, given Defendant Prager Metis CPAs, LLC was not independent when it conducted the reviews of the interim financial statements due to the indemnification provisions in the engagement letters.

104.    By failing to be independent in accordance with Rule 2-01(b) of Regulation S-X [17 C.F.R. § 210.2-01(b)] and engaging in the conduct described above, Defendant Prager Metis CPAs, LLC knowingly or recklessly provided substantial assistance to, and thereby aided and abetted, these issuer clients' violations of Section 13(a) of the Exchange Act [15 U.S.C. § 78m(a)] and Rule 13a-13 [17 C.F.R. § 240.13a-13] thereunder.

105.    By reason of the foregoing, pursuant to Section 20(e) of the Exchange Act [15 U.S.C. § 78t(e)], Defendant Prager Metis CPAs, LLC aided and abetted, and unless enjoined, is reasonably likely to continue to aid and abet, violations of Section 13(a) of the Exchange Act [15 U.S.C. § 78m(a)] and Rule 13a-13 [17 C.F.R. § 240.13a-13] thereunder.

## COUNT VIII

### (Against Defendant Prager Metis CPAs, LLC and Defendant Prager Metis CPAs LLP)

### Aiding and Abetting Violations of Section 15(d) of the Exchange Act and Rule 15d-13 thereunder by 3 Issuer Clients

106.    The Commission repeats and realleges Paragraphs 1 through 59 of this Complaint and the information in the attached **Exhibit 1**.

107.    Section 15(d) of the Exchange Act [15 U.S.C. § 78o(d)] and Rule 15d-13 [17 C.F.R. § 240.15d-13] thereunder, require, among other things, that issuers with effective registration statements or reporting voluntarily under Section 15(d) of the Exchange Act [15 U.S.C. § 78o(d)], file accurate and complete reports with the Commission that are required by Section 13(a) of the Exchange Act [15 U.S.C. § 78m(a)] for each class of securities covered by

the registration statement, including quarterly reports on Forms 10-Q that include interim financial statements reviewed by an independent public accountant.  If an issuer is a voluntary filer, its filings with the Commission still must contain accurate and complete information.  Rule 10-01(d) of Regulation S-X [17 C.F.R. § 210.10-01(d)] also requires the interim financial statements included in a Form 10-Q to be reviewed by an independent public accountant.

108.     From in or around April 29, 2019 to in or around July 22, 2019, 2 of Defendant Prager Metis CPAs, LLC's issuer clients with effective registration statements or reporting voluntarily under Section 15(d) of the Exchange Act [15 U.S.C. § 78o(d)], **Issuer 14** and **Issuer 53**, filed 3 quarterly reports on Forms 10-Q with the Commission that included interim financial statements that Defendant Prager Metis CPAs, LLC had reviewed pursuant to engagement letters containing indemnification provisions, and that also included certifications by the issuers' principal executive and financial officers, pursuant to 18 U.S.C. § 1350, as adopted by Section 906 of SOX, misstating that the reports "fully compl[y] with the requirements of Section 13(a) or 15(d) of the Securities Exchange Act of 1934 . . . ," in violation of Section 15(d) of the Exchange Act [15 U.S.C. § 78o(d)] and Rule 15d-13 [17 C.F.R. § 240.15d-13] thereunder, given Defendant Prager Metis CPAs, LLC was not independent when it conducted the reviews of the interim financial statements due to the indemnification provisions in the engagement letters.

109.     In or around May 31, 2019, 1 of Defendant Prager Metis CPAs LLP's issuer clients with an effective registration statement or reporting voluntarily under Section 15(d) of the Exchange Act [15 U.S.C. § 78o(d)], **Issuer 54**, filed 1 quarterly report on Form 10-Q with the Commission that included interim financial statements that Defendant Prager Metis CPAs LLP had reviewed pursuant to an engagement letter containing indemnification provisions, and that also included a certification by **Issuer 54's** principal executive and financial officers, pursuant to

18 U.S.C. § 1350, as adopted by Section 906 of SOX, misstating that the report "fully complies

with the requirements of Section 13(a) or 15(d) of the Securities Exchange Act of 1934 . . . ," in

violation of Section 15(d) of the Exchange Act [15 U.S.C. § 78o(d)] and Rule 15d-13 [17 C.F.R.

§ 240.15d-13] thereunder, given Defendant Prager Metis CPAs LLP was not independent when

it conducted the review of the interim financial statements due to the indemnification provisions

in the engagement letter.

110.    By failing to be independent in accordance with Rule 2-01(b) of Regulation S-X

[17 C.F.R. § 210.2-01(b)] and engaging in the conduct described above, Defendants knowingly

or recklessly provided substantial assistance to, and thereby aided and abetted, these issuer

clients' violations of Section 15(d) of the Exchange Act [15 U.S.C. § 78o(d)] and Rule 15d-13

[17 C.F.R. § 240.15d-13] thereunder.

111.    By reason of the foregoing, pursuant to Section 20(e) of the Exchange Act [15

U.S.C. § 78t(e)], Defendants aided and abetted, and unless enjoined, are reasonably likely to

continue to aid and abet, violations of Section 15(d) of the Exchange Act [15 U.S.C. § 78o(d)]

and Rule 15d-13 [17 C.F.R. § 240.15d-13] thereunder.

## COUNT IX

### (Against Defendant Prager Metis CPAs, LLC)

### Violations of Exchange Act Rule 17a-5(i) with Respect to 4 BD Clients

112.    The Commission repeats and realleges Paragraphs 1 through 59 of this Complaint

and the information in the attached **Exhibit 1**.

113.    From in or around February 27, 2019 to in or around March 4, 2019, the

following BD clients of Defendant Prager Metis CPAs, LLC made filings with the Commission

that included Defendant Prager Metis CPAs, LLC's audit reports, each purporting to be a report

of an independent registered public accounting firm: **Broker-Dealer 1**, **Broker-Dealer 2**, **Broker-Dealer 3**, and **Broker-Dealer 4**.

114.    Exchange Act Rule 17a-5(f)(1) [17 C.F.R. § 240.17a-5(f)(1)] requires an independent public accountant to "be qualified and independent in accordance with" Rule 2-01 of Regulation S-X [17 C.F.R. § 210.2-01], and under Exchange Act Rule 17a-5(g) [17 C.F.R. § 240.17a-5(g)], the independent public accountant must "prepare an independent pubic accountant's report," as required under Exchange Act Rule 17a-5(d) [17 C.F.R. § 240.17a-5(d)], in accordance with the PCAOB standards, and based on the requirements in Exchange Act Rule 17a-5(i) [17 C.F.R. § 240.17a-5(i)].

115.    Defendant Prager Metis CPAs, LLC, by failing to be independent in accordance with Rule 2-01(b) of Regulation S-X [17 C.F.R. § 210.2-01(b)] and engaging in the conduct described above, violated the accountant's reports provisions of Exchange Act Rule 17a-5(i) [17 C.F.R. § 240.17a-5(i)], by misstating as to the audits included in the accountant's reports (which certified the financial statements) that those audits the Defendant Prager Metis CPAs, LLC conducted on behalf of these BD clients were conducted by an independent auditor in accordance with the applicable professional standards.

116.    By reason of the foregoing, Defendant Prager Metis CPAs, LLC, directly and indirectly, violated and unless enjoined, is reasonably likely to continue to violate, Exchange Act Rule 17a-5(i) [17 C.F.R. § 240.17a-5(i)].

## COUNT X

### (Against Defendant Prager Metis CPAs, LLC)

### Aiding and Abetting Violations of Section 17(a) of the Exchange Act and Rule 17a-5 thereunder by 4 BD Clients

117.     The Commission repeats and realleges Paragraphs 1 through 59 of this Complaint and the information in the attached **Exhibit 1**.

118.     From in or around February 27, 2019 to in or around March 4, 2019, 4 of Defendant Prager Metis CPAs, LLC's BD clients registered with the Commission, **Broker-Dealer 1**, **Broker-Dealer 2**, **Broker-Dealer 3**, and **Broker-Dealer 4**, filed 4 annual audited reports on Forms X-17A-5 with the Commission that included Defendant Prager Metis CPAs, LLC's audit reports, each purporting to be a report of an independent registered public accounting firm, for audits of the BDs' financial statements that Defendant Prager Metis CPAs, LLC conducted when Defendant Prager Metis CPAs, LLC was not, in fact, independent due to the indemnification provisions in the relevant engagement letters, in violation of Section 17(a) of the Exchange Act [15 U.S.C. § 78q(a)] and Rule 17a-5 [17 C.F.R. § 240.17a-5] thereunder, which require, among other things, that registered broker-dealers file accurate and complete annual reports with the Commission containing financial statements audited and certified by an independent public accountant in accordance with the standards of the PCAOB.  Exchange Act Rule 17a-5(f)(1) [17 C.F.R. § 240.17a-5(f)(1)] requires an independent public accountant to "be qualified and independent in accordance with" Rule 2-01 of Regulation S-X [17 C.F.R. § 210.2-01].

119.     By failing to be independent in accordance with Rule 2-01(b) of Regulation S-X [17 C.F.R. § 210.2-01(b)] and engaging in the conduct described above, Defendant Prager Metis CPAs, LLC knowingly or recklessly provided substantial assistance to, and thereby aided and

abetted, these BD clients' violations of Section 17(a) of the Exchange Act [15 U.S.C. § 78q(a)] and Rule 17a-5 [17 C.F.R. § 240.17a-5] thereunder.

120.    By reason of the foregoing, pursuant to Section 20(e) of the Exchange Act [15 U.S.C. § 78t(e)], Defendant Prager Metis CPAs, LLC aided and abetted, and unless enjoined, is reasonably likely to continue to aid and abet, violations of Section 17(a) of the Exchange Act [15 U.S.C. § 78q(a)] and Rule 17a-5 [17 C.F.R. § 240.17a-5] thereunder.

## COUNT XI

### (Against Defendant Prager Metis CPAs, LLC)

### Aiding and Abetting Violations of Section 206(4) of the Advisers Act and Rule 206(4)-2 thereunder by 4 IA Clients

121.    The Commission repeats and realleges Paragraphs 1 through 59 of this Complaint and the information in the attached **Exhibit 1**.

122.    Defendant Prager Metis CPAs, LLC's registered IA clients, **Investment Adviser 1**, **Investment Adviser 2**, **Investment Adviser 3**, and **Investment Adviser 4**, were engaged, for compensation, in the business of directly advising others as to the value of securities or as to the advisability of investing in, purchasing, or selling securities.  **Investment Adviser 1**, **Investment Adviser 2**, **Investment Adviser 3**, and **Investment Adviser 4** were therefore "investment advisers" within the meaning of Section 202(a)(11) of the Advisers Act [15 U.S.C. § 80b-2(a)(11)].  In fact, they were registered with the Commission during the December 2017 to October 2020 time period.

123.    From in or around March 29, 2018 to in or around January 28, 2021, **Investment Adviser 1**, **Investment Adviser 2**, **Investment Adviser 3**, and **Investment Adviser 4** filed 11 Forms ADV-E with the Commission, attaching surprise exam reports issued by Prager (each entitled, "Report of Independent Accountant") for exams of client assets in the custody of an IA

that Defendant Prager Metis CPAs, LLC conducted when Defendant Prager Metis CPAs, LLC was not, in fact, independent due to the indemnification provisions in the relevant engagement letters, in violation of Section 206(4) of the Advisers Act [15 U.S.C. § 80b-6(4)] and Rule 206(4)-2 [17 C.F.R. § 275.206(4)-2] thereunder, which require, among other things, that (i) client funds and securities be maintained with a qualified custodian, and (ii) those client funds and securities over which the adviser has custody be verified through an annual surprise exam by an independent public accountant.  Advisers Act Rule 206(4)-2(d)(3) [17 C.F.R. § 275.206(4)-2(d)(3)] defines an independent public accountant as "a public accountant that meets the standards of independence described in rule 2-01(b) and (c) of Regulation S-X" [17 C.F.R. § 210.2-01(b) and (c)].

124.    By failing to be independent in accordance with Rule 2-01(b) of Regulation S-X [17 C.F.R. § 210.2-01(b)] and engaging in the conduct described above, Defendant Prager Metis CPAs, LLC knowingly or recklessly provided substantial assistance to, and thereby aided and abetted, these IA clients' violations of Section 206(4) of the Advisers Act [15 U.S.C. § 80b-6(4)] and Rule 206(4)-2 [17 C.F.R. § 275.206(4)-2] thereunder.

125.    By reason of the foregoing, pursuant to Section 209(f) of the Advisers Act [15 U.S.C. § 80b-9(f)], Defendant Prager Metis CPAs, LLC aided and abetted, and unless enjoined, is reasonably likely to continue to aid and abet, violations of Section 206(4) of the Advisers Act [15 U.S.C. § 80b-6(4)] and Rule 206(4)-2 [17 C.F.R. § 275.206(4)-2] thereunder.

## RELIEF REQUESTED

**WHEREFORE**, the Commission respectfully requests this Court find the Defendants committed the violations alleged, and:

## A.     PERMANENT INJUNCTION

Issue a Permanent Injunction, pursuant to Section 21(d) of the Exchange Act [15 U.S.C. § 78u(d)] and Section 209(d) of the Advisers Act [15 U.S.C. § 80b-9(d)], enjoining Defendants Prager Metis CPAs, LLC and Prager Metis CPAs LLP, and their officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them, and each of them, from violating, directly or indirectly, Rule 2-02(b) of Regulation S-X [17 C.F.R. § 210.2-02(b)] and Exchange Act Rule 17a-5(i) [17 C.F.R. § 240.17a-5(i)]; from aiding and abetting violations of Sections 13(a), 15(d), and 17(a) of the Exchange Act [15 U.S.C. §§ 78m(a), 78o(d), and 78q(a)] and Rules 13a-1, 13a-11, 13a-13, 15d-1, 15d-13, and 17a-5 [17 C.F.R. §§ 240.13a-1, 240.13a-11, 240.13a-13, 240.15d-1, 240.15d-13, and 240.17a-5] thereunder; and from aiding and abetting violations of Section 206(4) of the Advisers Act [15 U.S.C. § 80b-6(4)] and Rule 206(4)-2 [17 C.F.R. § 275.206(4)-2] thereunder.

## B.     DISGORGEMENT AND PREJUDGMENT INTEREST

Issue an Order directing Defendants Prager Metis CPAs, LLC and Prager Metis CPAs LLP to disgorge all ill-gotten gains or proceeds received, with prejudgment interest thereon, resulting from the acts and/or courses of conduct complained of herein.

## C.     CIVIL MONETARY PENALTIES

Issue an Order directing Defendants Prager Metis CPAs, LLC and Prager Metis CPAs LLP to pay civil money penalties pursuant to Section 21(d) of the Exchange Act [15 U.S.C. § 78u(d)] and Section 209(e) of the Advisers Act [15 U.S.C. § 80b-9(e)].

## D.     FURTHER RELIEF

Grant such other and further relief as may be necessary and appropriate.

### E.      RETENTION OF JURISDICTION

Further, the Commission respectfully requests that this Court retain jurisdiction over this action and over Defendants in order to implement and carry out the terms of all orders that may hereby be entered, or to entertain any suitable application or motion by the Commission for additional relief within the jurisdiction of this Court.

Dated:  September 29, 2023                    Respectfully submitted,

By:      s/ Christine Nestor
**Christine Nestor, Esq.**
Senior Trial Counsel
Florida Bar No. 597211
Direct Dial: (305) 982-6367
Email: nestorc@sec.gov
***Lead Attorney***
***Attorney To Be Noticed***

**ATTORNEY FOR PLAINTIFF**
**SECURITIES AND EXCHANGE COMMISSION**
801 Brickell Avenue, Suite 1950
Miami, Florida 33131
Telephone: (305) 982-6300
Facsimile: (305) 536-4154