United States District Court
for the
Southern District of Florida

| | |
|---|---|
| Securities and Exchange Commission, Plaintiff, <br><br> v. <br><br> Prager Metis CPAs, LLC, and Prager Metis CPAs LLP Defendants. | ) <br> ) <br> ) <br> ) Civil Action No. 23-23723-Civ-Scola <br> ) <br> ) <br> ) <br> ) |

### Order Denying Motion to Dismiss

The Securities and Exchange Commission (the "SEC" or the "Commission") complains that Defendants Prager Metis CPAs, LLC ("Prager LLC"), and Prager Metis CPAs LLP ("Prager LLP") (together, "Prager"), two affiliated accounting and auditing firms, have repeatedly violated the SEC's auditor independence rule by including indemnification provisions in their client engagement letters. (Compl., ECF No. 1.) The complaint sets forth eleven claims: two for direct violations, one of Rule 2-02(b) of SEC Regulation S-X[1] (count one, against both Defendants) and the other of Rule 17a-5(i) of the Exchange Act (count nine, against just Prager LLC); and nine for aiding and abetting certain clients in violating, variously, section 13(a) of the Exchange Act (counts three, six, and seven, all against just Prager LLC, and count four, against both Defendants), section 15(d) of the Exchange Act (counts five and eight, against both Defendants), both section 13(a) and 15(d) together (count two, against just Prager LLC), section 17(a) of the Exchange Act (count ten, against just Prager LLC), and section 206(4) of the Advisers Act (count eleven, against just Prager LLC). Prager now asks the Court to dismiss the complaint, or a subset of its counts, arguing that (1) the SEC's allegations fail to allege that Prager lacked independence from its audit clients; (2) many of the SEC's claims are defective because they are based on engagement letters that expressly exclude Prager's own negligent acts; and (3) the SEC failed to properly allege scienter with respect to its nine aiding-and-abetting claims. (Defs.' Mot., ECF No. 16.) The SEC has responded in opposition and Prager has timely replied (Defs.' Reply, ECF No. 28). After careful review, the Court **denies** Prager's motion to dismiss (**ECF No. 16**).

---

[1] As the SEC explains, Regulation S-X is a consolidation, first assembled in 1940, of several sets of accounting instructions from various forms into one regulation. (Pl.'s Resp., ECF No. 24, 10.)

1. **Background**[2]

Prager LLC and Prager LLP are both accounting and auditing firms, the former headquartered in New York and the latter in California. (Compl. ¶¶ 9, 10.) Prager LLC has been registered with the Public Company Accounting Oversight Board ("PCAOB")[3] since 2003 and has eighteen offices worldwide, including two in Miami, Florida. (*Id.* ¶ 9.) Prager LLP has been registered with the PCAOB since 2010 and has five offices, all in California. (*Id.* ¶ 10.)

In August 2018, Prager acquired a certified public accounting firm, that had been based in New Jersey since 1981 and registered with the PCAOB since 2003. (*Id.* ¶¶ 12, 33.) After acquiring that firm, Prager began regularly auditing public issuers—companies whose securities are registered with the SEC and who trade in U.S. markets. (*Id.* ¶¶ 9, 33.) Prior to that, Prager's audit work had been limited to mostly private companies and investment advisors with only one public-issuer client. (*Id.* ¶ 33.)

At issue in this case are over 87 engagement letters that Prager executed, between December 2017 and October 2020, through which Prager earned over $3 million in fees, with 62 clients: 54 public issuers, 4 broker dealers, and 4 investment advisors (the "SEC Registrant Clients"). (*Id.* ¶¶ 11, 34.) Those engagement letters all contained indemnification provisions. (*Id.* ¶ 34.) One version of that provision, appearing in 77 of the engagement letters, was as follows:

> In the event that we become obligated to pay any judgment, fine, penalty, or similar award or sanction; agree to pay any amount in settlement; and/or incur any costs including legal fees, as a result of a claim, investigation, or other proceeding instituted by any third party, including any governmental or quasi-governmental body, and if such obligation is a direct or indirect result of any inaccurate or incomplete information that you provide to us during the course of this engagement, and not any failure on our part to comply with professional standards, you agree to indemnify us, and hold us harmless as against such obligations, agreement and/or costs.

---

[2] This background is based on the allegations in the SEC's complaint. For purposes of evaluating Prager's motion, the Court accepts the SEC's factual allegations as true and construes those allegations in the light most favorable to the SEC per Federal Rule of Civil Procedure 12(b)(6).

[3] The PCAOB was created by the Sarbanes-Oxley Act of 2002 to oversee, among other things, accounting professionals who provide independent audit inspection reports for publicly traded companies. (*Id.* ¶ 9 n. 1.)

(*Id.*) Another version, included in some of those 77 letters as well others, read:

> Because of the importance of management's representations to an effective audit [or examination], the Company agrees to release and indemnify [Prager] and its personnel from any liability and costs relating to our services under this agreement attributable to any knowing misrepresentations by management.

(*Id.*) In conjunction with those 87 engagement letters, Prager conducted 62 audits, 11 examinations, and 144 reviews. (*Id.*) Along with those audits, exams, and reviews, Prager also signed various accountant's reports and certifications, claiming to be independent, which its clients then filed with the SEC. (*Id.* ¶¶ 36–43, 59; Ex. 1, ECF No. 1-1.)

Guidance from the SEC has long emphasized the paramount importance of auditor independence in assuring investors that company financial statements "have been subjected to a rigorous examination by an objective, impartial, and skilled professional, and that investors, therefore, can rely on them." (Compl. ¶ 17 (quoting *Revision of the Commission's Auditor Independence Requirements*, Exchange Act Rel. No. 43602, 2000 WL 1726933, at *2 (Nov. 21, 2000)).) Other SEC publications, of which other agencies have taken note, have also criticized indemnification provisions as impairing auditor independence. (Compl. ¶¶ 28, 30, 32.) And, internally, beginning in January 2019, two Prager partners raised concerns about the indemnification provisions, specifically warning about the provisions' impairing Prager's independence from its clients. (*Id.* ¶¶ 44–49). Undeterred, Prager continued to include the provisions, not updating its engagement-letter template until December 2019. (*Id.* ¶ 49.) Despite the circulation of the updated template, however, Prager LLC nevertheless subsequently executed six new engagement letters, the last in October 2020, that included indemnification provisions. (*Id.* ¶ 50.)

In the meantime, in September 2020, the PCAOB contacted Prager, notifying it that two of its audit engagement letters, with two public issuer clients, included indemnification provisions that the PCAOB flagged as independence deficiencies. (*Id.* ¶ 55, 56.) A few weeks later, Prager responded to the PCAOB, acknowledging that the indemnification provisions were in its engagement letter templates and advising that, after consulting legal counsel in November 2019, Prager had immediately circulated a revised template that removed the indemnification provisions. (*Id.* ¶ 57.) What Prager neglected to tell the PCAOB, however, is that, in addition to the two letters the PCAOB had identified, Prager had been including such provisions in its engagement letters since 2017. (*Id.*) Nor did Prager tell the PCAOB that two of its partners had

flagged the indemnity-provision issue beginning in January 2019. (*Id.*) Prager further failed to notify the PCAOB that, even after circulating the new engagement-letter template, it subsequently executed six more letters with the indemnity provision, the last one issuing in October 2020, several weeks after the PCAOB's initial alert and over a month after Prager's response to the alert. (*Id.* ¶¶ 57, 58.) Ultimately, it was not until either late 2022 or early 2023 that Prager implemented a quality control manual, proactively requiring the use of an audit engagement letter template that does not include indemnification provisions. (*Id.* ¶ 51.)

Moreover, apart from the engagement letters, Prager never advised its clients of any impact the indemnity provisions might have on Prager's independence from them, their audit committees, or those charged with governance of the clients. (*Id.* ¶ 54.) To the contrary, in some communications, Prager affirmatively claimed that it was not aware of any relationships that may reasonably be thought to bear on its independence, explicitly maintaining to one client that Prager was "independent of the [client] in compliance with Rule 3520 and within the meaning of the federal securities laws administered by the Securities and Exchange Commission." (*Id.*) Prager also signed and issued accountant's reports to its clients (who, in turn, then included those reports or incorporated them by reference into certain SEC filings) that stated Prager was independent with respect to each client. (*Id.* ¶¶ 36–43, 59.)

The SEC now seeks injunctive relief, disgorgement (including interest), and civil monetary penalties, as a result of Prager's alleged failure to be independent. Its claims focus on not only Prager's direct violations, but also Prager's aiding and abetting its clients' violations of various securities laws.

### 2. Legal Standard

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must accept all the complaint's allegations as true, construing them in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). A pleading need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[T]he pleading standard Rule 8 announces does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation omitted). A plaintiff must articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is

liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Thus, a pleading that offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" will not survive dismissal. *See Twombly*, 550 U.S. at 555. "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 679.

### 3. Analysis

The viability of the claims in the complaint hinge on whether the SEC has alleged facts sufficient to imply that Prager's independence as a public accountant was impaired. According to the SEC, Prager's independence was impaired because it included certain indemnification provisions in its engagement letters with its SEC Registrant Clients—for whom Prager conducted, collectively, 62 audits, 11 exams, and 144 reviews (sometimes collectively referred to generally as "audits" or "reviews"). In support of its position, the SEC cites to certain policy statements and guidance, both from within and without the SEC, that opine that indemnification provisions impair auditor independence: (1) the SEC's *Codification of Financial Reporting Policies* (the "*Codification*"),[4] § 602.02.f.i (Indemnification by Client); (2) the SEC's *Office of the Chief Accountant: Application of the Commission's Rules on Auditor Independence Frequently Asked Questions* ("*OCA FAQs*"), "A. General standard of independence [2-01(b)]" (issued Dec. 13, 2004), available at: https://www.sec.gov/info/ accountants/ocafaqaudind080607; and (3) *Interagency Advisory on the Unsafe and Unsound Use of Limitation of Liability Provisions in External Audit Engagement Letters*, *available at*: http://www.federalreserve.gov/boarddocs/srletters/2006/sr0604a1.pdf (2006) (discussing the *Codification* and the *OCA FAQs*). The SEC also includes allegations that two Prager partners recognized the indemnification provisions being included in Prager's engagement letters as impairing independence, advising other Prager partners of their concerns. (Compl. ¶¶ 44–46, 48.)

In urging dismissal, Prager maintains that the SEC's "self-declared proposition"—that the indemnification provisions impaired Prager

---

[4] According to the SEC, "[t]he purpose of the codification is to provide one document which is organized in a logical manner and which can be used as a reference for the [SEC]'s current published positions on accounting and auditing matters relating to financial reporting." *Codification of Fin. Reporting Policies,* Release No. 1 (Apr. 15, 1982).

independence—"is contrary to law." (Def.'s Mot. at 2.) In support, Prager points out that the only binding regulation on which the SEC relies does not itself mention anything about indemnification provisions. (*Id.*) Additionally, says Prager, the SEC fails to allege any facts or circumstances that, as a result of any of the indemnification provisions, show that Prager's independence was actually impaired; that Prager ever failed to properly discharge its professional obligations; that Prager ever even invoked one of the indemnification provisions; or that Prager conducted any of its audits without the objectivity and impartiality demanded by binding SEC regulations. (*Id.*) As Prager views it, the SEC, without any legal basis to do so, is attempting to improperly impose a categorical ban on all indemnification provisions. (*Id.*) While the Court finds there may be some merit to Prager's position that there is a lack of support for a categorical ban, the Court nonetheless disagrees that this case rests, as Prager frames it, "entirely on [the SEC's] own proposition that indemnification provisions automatically impair an auditor's independence." (Def.'s Mot. at 2.)

To start, neither party disputes that Rule 2-01(b) of Regulation S-X sets out the general standard for auditor independence. 17 C.F.R. § 210.2-01(b). Under that rule:

> The Commission will not recognize an accountant as independent, with respect to an audit client, if the accountant is not, or a reasonable investor with knowledge of all relevant facts and circumstances would conclude that the accountant is not, capable of exercising objective and impartial judgment on all issues encompassed within the accountant's engagement. In determining whether an accountant is independent, the Commission will consider all relevant circumstances, including all relationships between the accountant and the audit client, and not just those relating to reports filed with the Commission.

*Id.* (sometimes referred to as "Rule 2-01(b)"). In addition to applying to audits of public-issuer clients, this provision also applies to audits of investment-advisor clients through Rule 206(4)-2(d)(3) of the Advisors Act (17 C.F.R. § 275.206(4)-2(d)(3)) and of broker-dealer clients through Rule 17a-5(f)(i) of the Exchange Act (17 C.F.R. § 210.2-01). At issue here, then, is whether the Court can infer from the facts and circumstances alleged in the complaint, assuming they are true, that Prager's independence was impaired—as defined by Rule 2-01(b).

### A. Rule 2-01(b) need not specifically list indemnification provisions as an impediment to auditor independence.

As a starting point, the Court disagrees with Prager's argument that the SEC cannot establish impaired independence based on the indemnification

provisions because indemnification provisions are not specifically identified as a concern in Rule 2-01(b). Prager's position is directly undercut by the preamble to the rule, which explains that, while a handful of provisions of section 210.2–01—paragraphs (c)(1) through (c)(5)— "reflect the application of the general standard to particular circumstances," Rule 2-01(b) itself supplies only "the general standard of auditor independence" and does not in any way "purport to . . . consider *all* circumstances that raise independence concerns." 17 C.F.R. § 210.2-01 (emphasis added). Indeed, in conjunction with introducing a list of specific circumstances that the regulation identifies as "inconsistent with" Rule 2-01(b), the regulation pointedly advises that the list is "non-exclusive." 17 C.F.R. § 210.2-01(c) (sometimes referred to as "Rule 2-01(c)"). Accordingly, the Court agrees with the SEC that indemnification agreements need not be specifically identified or listed in order to form the basis of an enforcement action under Rule 2-01(b).

### B. The viability of the complaint does not hinge on a categorical rule against all indemnity provisions.

Prager also complains about the SEC's repeatedly claiming that Prager "was not independent" when it conducted audits of its clients' financial statements "due to the indemnification provisions in the engagement letters." (Def.'s Mot. at 8 (citing Compl. ¶¶ 70–72, 78, 84–87, 92, 93, 98, 103, 108, 109, 118, 123).) As Prager sees it, all eleven counts of the complaint hinge entirely on SEC's position that the inclusion of any type of indemnification provision alone will render an accountant's independence impaired. (Def.'s Mot. at 9.) Prager claims this to be fatal to the SEC's complaint for two principal reasons: (1) there is no legal support for a categorical rule that the inclusion of *any* indemnity provision automatically impairs an accountant's independence; and (2) imposing such a categorical rule runs afoul of Rule 2-01(b)'s directive that "all relevant facts and circumstances" be taken into consideration when evaluating an accountant's independence (or impairment thereof). (*Id.* at 9–14 (quoting 17 C.F.R. § 210.2-01(b)).) And, as to the second point, Prager argues that the complaint is devoid of any factual allegations that Prager's independent judgment was in any way affected by the indemnification provisions.

As to both points, the Court finds Prager's arguments miss their marks. While there are some indications in the complaint and in briefing that the SEC's position is indeed that any indemnification provision may impair independence, the SEC's actual allegations venture well beyond the mere existence of indemnification provisions. First, as set forth above, the SEC reproduces, verbatim, the indemnification provisions at issue here. (Compl. ¶

34.) One version of the provision was included in 77 engagement letters and another in 14 letters. (*Id.*) In the version included in 77 letters, the client agrees to indemnify Prager for any liability arising from the client's own provision of "any inaccurate or incomplete information" so long as Prager has complied with unspecified "professional standards." (*Id.*) In the other version, Prager is indemnified for any liability as to any "knowing misrepresentations" made by the client's management, regardless of whether Prager otherwise complied with professional standards. (*Id.*)

  The complaint also recites language from two publications issued by the SEC wherein the SEC has long condemned the use of indemnity agreements, concluding that they impair, or frequently impair, auditor independence. (*Id.* ¶ 28 (citing § 602.02.f.i of the *Codification*); ¶ 30 (citing the *OCA FAQs*).)[5] Additionally, the SEC supplies allegations that a number of other agencies (the Department of the Treasury, the Federal Reserve System, the Federal Deposit Insurance Corporation, the National Credit Union Administration, the Office of the Comptroller of the Currency, and the Office of Thrift Supervision) have also published guidance "recognizing the [SEC's] position that auditors that include indemnification provisions in engagement letters are not independent." (Compl. ¶ 32.) Furthermore, the complaint alleges several facts from which the Court can readily infer that Prager was aware that the indemnification agreements impaired its independence. For example, the complaint provides that two Prager partners themselves voiced concerns to other Prager partners that the indemnification provisions impaired auditor independence. (*Id.* ¶¶ 44–49.) Additionally, the PCAOB notified Prager that indemnification provisions in two of its audit engagement letters, with two public issuer clients, were flagged as independence deficiencies. (Id. ¶¶ 55, 56.) Despite these warnings, Prager continued including indemnification provisions in a handful of new engagement letters, one even following the alert from the PCAOB. (*Id.* ¶ 50.) From just the above-referenced allegations, assuming they are all true and reading them in the light most favorable to the SEC, the Court can infer that Prager's indemnity agreements plausibly ran afoul of Rule 2-01(b).[6]

---

[5] Prager complains that the SEC improperly relies on these two publications, and these two publications alone, to establish Prager's impaired independence. (Def.'s Mot. at 9–11.) The Court disagrees with Prager's premise: the SEC relies on Rule 2-01(b) in alleging Prager's impaired independence and references the publications only as support for its theory. Whether the SEC could properly rely on only those two publications alone to support its claims, then, is irrelevant and need not be determined—at least at this point in the litigation.

[6] As Prager acknowledges in reply, the complaint need not allege that Prager's independence was actually impaired. (Def.'s Reply at 7 n. 4.) Instead, as noted in the preamble to Rule 2-01: "Section 210.2-01 is designed to ensure that auditors are qualified and independent of their audit clients both in fact *and in appearance.*" 17 C.F.R. § 210.2-01; c*f. U.S. v. Arthur Young &*

### C. Prager fails to convince that eliminating immunity where an auditor has been negligent does not necessarily remove an indemnity provision's independence impairment.

Prager also argues that the vast majority of the offending engagement letters did not provide for indemnification if Prager acted negligently and, therefore, its independence could not have been impaired under those provisions. (Def.'s Mot. at 14–17.) In support, Prager points to section 602.02.f.i of the *Codification* and the *OCA FAQs*, both of which the SEC cites in its complaint. (*Id.* at 14.) Prager maintains that these two SEC publications show that independence concerns are triggered only when an indemnification provision immunizes accountants for their own negligence. (*Id.* at 14–15.) Accordingly, says Prager, all the counts that rest only on the indemnification provisions that specifically exclude immunity where Prager has not complied with "professional standards"—that is, counts one through eight—should be dismissed. The Court is not persuaded.

To begin with, Prager points to no legal authority supporting its contention that only those types of indemnity provisions specifically identified in SEC published guidance can impair independence. Further, by its own terms, the *Codification* itself provides, in introducing section 602.02, that "the guidelines and illustrations presented in this section cannot be, nor are they intended to be, definitive answers on any aspect of this subject," and further explains that they "are designed to apprise the practitioners of typical situations which have involved loss of independence, whether in appearance or in fact, and by so doing to place them on notice of these and similar potential threats to their independence." (Pl.'s Resp., Ex. B, § 602.02.a. of the *Codification*.) Further, Prager neglects to reference that part of the *OCA FAQs* that states, without qualification, that "including in engagement letters a clause that an issuer would release, indemnify or hold harmless from any liability and costs resulting from knowing misrepresentations by management would also impair the firm's independence." *OCA FAQs*. In sum, the Court finds Prager's position, that an accountant's independence can't possibly diminished where it is not immunized for its own negligence, unconvincing. That is, even though an auditor is not shielded where it has been negligent, its independence may nonetheless be diminished where its incentive to conduct an exhaustive investigation as to its client's representations is weakened. *C.f. In the Matter of Am. Terminals and Transit Co.*, 1 S.E.C. 701 (SEC Release No.

---

*Co.*, 465 U.S. 805, 819 n. 15 (1984) ("It is therefore not enough that financial statements *be* accurate; the public must also *perceive* them as being accurate.") ("Public faith in the reliability of a corporation's financial statements depends upon the public perception of the outside auditor as an independent professional.").

Sept. 29, 1936) (SEC order noting that the protection of investors requires independent auditors to "be free of the entangling alliances which relational and contractual connections with registrants frequently engender [and to] approach their task with complete objectivity—critical of the practices and procedures of registrants").

### D. Aiding and Abetting

Finally, Prager argues that, even if Prager's independence was found to be impaired, the complaint nonetheless fails to allege the scienter element of the aiding-and-abetting claims set forth in counts two through eight and counts ten and eleven. (Def.'s Mot. at 17–20.) According to Prager the allegations establish, at most, only that "Prager *should have known* that the indemnification provisions would impair the firm's independence." (*Id.* at 19 (emphasis in original).) The Court is not persuaded.

To state a claim for aiding and abetting a securities law violation, a complaint must allege "(1) a primary violation by another party; (2) a general awareness by the accused aider-abettor that his role was part of an overall activity that is improper; and (3) that the accused aider-abettor must have knowingly and substantially assisted the violation." *S.E.C. v. Big Apple Consulting USA, Inc.*, 783 F.3d 786, 800 (11th Cir. 2015) (cleaned up). As the parties agree, the SEC can satisfy the scienter requirement, set forth in the second and third prongs, by alleging facts establishing either "actual knowledge" or, at a minimum, "severe recklessness." *Id.* at 799–800. Severe recklessness, in turn, can be established through allegations of "severe, reckless disregard for the truth." *Id.* at 805.

At a minimum, the Court finds the facts set forth in the complaint, when read in the light most favorable to the SEC, sufficiently allow the Court to infer Prager's "severe recklessness." As the allegations relay, published SEC guidance, since as early as 1982, has clearly telegraphed the SEC's concerns that indemnity provisions impair public-auditor independence. (Compl. ¶¶ 28, 30, 32.) Further, in January 2019, one Prager partner emailed other partners notifying them that another partner included an indemnity provision in an engagement letter which the notifying partner "thought impaired [Prager's] independence." (*Id.* ¶ 45.) The notifying partner further pointed out that he himself had taken the provision out his engagement letters. (*Id.* ¶¶ 45, 46.) The notifying partner even quoted guidance language affirmatively advising that an "engagement letter should not include an indemnification clause" or even

"language of that nature."[7] (*Id.* ¶ 46.) Six months later, another Prager partner emailed other partners notifying them that there is "an indemnity clause in [an] engagement letter" and said, as that other partner recalled, "an indemnity clause may be a problem with the PCAOB/SEC." (*Id.* ¶ 48.) Finally, even after a Pager partner (who was in charge of Prager's public company audit practice) circulated an email attaching a "revised audit engagement letter" template, eliminating the indemnification provision, Prager LLC sent out six additional engagement letters that included the provision. (*Id.* ¶ 49, 50.)

      These allegations are enough. They establish much more than "merely simple or even inexcusable negligence." *Woods v. Barnett Bank of Ft. Lauderdale*, 765 F.2d 1004, 1010 (11th Cir. 1985). Nor do these allegations, as Prager urges, amount to simply "red flags" that at most, may have only "put the defendants on notice that some impropriety *may* have been taking place," without creating "a strong inference of actual knowledge of wrongdoing." (Def.'s Mot. at 19 (cleaned up) (emphasis added) (quoting *Wiand v. Wells Fargo Bank, N.A.*, 938 F. Supp. 2d 1238, 1245 (M.D. Fla. 2013)).) Instead, the allegations show that at least two partners within the firm were well aware that, because of the indemnification provisions, the SEC would not consider the firm independent. The allegations also establish that those two partners communicated their independence-impairment concerns to senior management, including partners who, variously, were in charge of Prager's public company audit practice; oversaw non-public company engagements; oversaw quality controls; and were designated as a co-managing partner. (¶ 14, 15, 44, 48.) And, the allegations show that, even after Prager proactively eliminated the indemnity provision from its engagement templates, six additional engagement letters were executed that continued to include indemnity provisions. From these facts, assuming they are true and construing them in the light most favorable to the SEC, the Court can infer that the impairment of Prager's independence due to the indemnity provisions was "so obvious that the defendant must have been aware of it" and that to ignore or reject the information amounted to "an extreme departure from the standards of ordinary care." *Woods v. Barnett Bank of Ft. Lauderdale*, 765 F.2d 1004, 1010 (11th Cir. 1985). Accordingly, the Court finds the complaint sufficiently establishes Prager's scienter with respect to the aiding and abetting claims.

---

[7] In a footnote, Prager complains that, at the very least, any claims of aiding-and-abetting liability for violations that occurred before these January 2019 communications cannot be supported. (Def.'s Mot. at 18 n. 7.) Accordingly, it says "[t]hose claims therefore must be dismissed." (*Id.*) Prager doesn't specify which claims its theory applies to nor does it provide any more depth to its argument. Without more, the Court declines to undertake the analysis.

### 4. Conclusion

For the reasons set forth above, the Court denies Prager's motion to dismiss (**ECF No. 16**).[8] Accordingly, the Court orders Prager to answer the complaint on or before **June 5, 2024**.

**Done and ordered**, in Miami, Florida, on May 29, 2024.

_____
Robert N. Scola, Jr.
United States District Judge

---

[8] Prager also briefly submits, in a footnote in its motion, that the "Court should dismiss Prager Metis CPAs LLP as a party and all claims against Prager Metis CPAs LLP for improper venue." (Def.'s Mot. at 8 n. 4.) Other than citing Federal Rule of Civil Procedure 12(b)(3) and reciting a phrase from 28 U.S.C. § 1391(b), regarding venue in general, Prager supplies no real analysis in its motion. Nor does Prager engage with the allegations in the complaint that say, for example, Prager LLP "transacted business in this judicial district where certain of the acts, practices, and courses of conduct constituting the violations alleged in this Complaint occurred." (Compl. ¶ 7.) Because of these defects in Prager's presentation of its venue argument, the Court declines to evaluate it. *See Hamilton v. Southland Christian Sch., Inc.*, 680 F.3d 1316, 1319 (11th Cir. 2012) ("A passing reference to an issue in a brief is not enough, and the failure to make arguments and cite authorities in support of an issue waives it."); *United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990) ("It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones.").